M&M/MARS SNACKMASTER DIVISION OF MARS, INC., Plaintiff,

v.

UNITED STATES, Defendant.

Consol. Court No. 81–10–01375.

United States Court of International Trade.

May 10, 1984.

Patton, Boggs & Blow, Washington, D.C. (Lanny J. Davis and Steven M. Schneebaum, Washington, D.C., on the briefs and at the argument), for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C. (Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, New York City, and Saul Davis, Pittsburgh, Pa., on the briefs and at the argument), for defendant.

## OPINION

BOE, Senior Judge:

In the above entitled action, plaintiff, M & M/Mars Snackmaster, requests this court to determine that certain payments received by its exporter pursuant to the Common Agricultural Policy ("CAP") of the European Economic Community ("EEC") serve to decrease the "cost of materials," which is one of the elements employed in computing the "cost of production" under § 402a(f) of the Tariff Act of 1930.[1] The parties have submitted cross motions for summary judgment on the legal issue of whether the Customs Service correctly appraised the cost of materials in disallowing the deduction for the CAP export rebate. Defendant has also filed a counterclaim alleging that the CAP payments are profit for purposes of computing the cost of production.

The parties are in agreement on the following material facts. Plaintiff imported non-chocolate confectionary products ("Skittles" and "Pacers Punch") to the United States from the United Kingdom where Mars, Limited ("Mars"), a company related to the plaintiff, manufactured them. No other manufacturer in the United Kingdom produced similar merchandise for export to the United States during 1978 and 1979. All of the sugar utilized in manufacturing these products was of EEC origin. The CAP provides for export levies or refunds on the sugar content of the exported product depending upon the difference between the world price and EEC price of sugar.[2] Plaintiff deducted the amount of the export refunds for sugar received by Mars from the cost of materials it submitted to the Customs Service in its schedule of elements of the statutory cost of production. No refund was received for the sugar content of the imported merchandise at or preceding the time the sugar was actually used in the manufacturing process. Mars treats the amount of CAP export refunds as receivable assets in its accounting records.

The parties agree that former 19 U.S.C. § 1402(f) is the proper basis for appraising the value of the imported merchandise.[3] Section 1402(f) defines cost of production as the sum of four elements:

**(f) Cost of production**

For the purpose of this subtitle the cost of production of imported merchandise shall be the sum of—

(1) The *cost of materials* of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual *general expenses* (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for *profit* (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same gen-

---

1. Section 402a(f) of the Tariff Act of 1930 is former 19 U.S.C. § 1402(f). Subsequent to the importation of the subject merchandise, the Trade Agreements Act of 1979 repealed this section. Trade Agreements Act of 1979, Pub.L. No. 96–39, § 201(b), 93 Stat. 144, 201 (1979).

2. If the EEC price of sugar exceeds the world price of sugar at the time of export scheduling, Mars receives an export refund; if the world price of sugar exceeds the EEC price of sugar at the time of export scheduling, Mars pays an export levy.

3. Under the law applicable to imports before January 1, 1981, cost of production is the appropriate method of those available for appraisement. *See* 19 U.S.C. § 1402(a) (1976).

eral character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

19 U.S.C. § 1402(f) (1976) (emphasis added).

At issue in the cross motions for summary judgment is whether the plaintiff's exporter received the CAP export rebate "at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business." *Id.* (cost of materials).

"[A] party attacking an appraised value has the burden of proving such value is incorrect and the asserted value is correct." *United States v. Cavalier Shipping Co.*, 56 CCPA 117, 124, 412 F.2d 245, 250 (1969). Accordingly, Mars must establish that the Customs Service erred in refusing to deduct the amount of the CAP export rebate from the cost of materials of the imported products.

Plaintiff claims that the "canons of statutory construction" and "decided cases" support its view, because these rebates "vest" at a time prior to exportation, which time interval is longer than the time required to produce the subject merchandise in the usual course of business. Plaintiff's misreading of the statute and applicable cases makes this argument untenable.

*Charles Stockheimer, Inter-Maritime Forwarding Co. v. United States*, 44 CCPA 92, 96 (1957), sets forth the purpose of § 1402(f)(1): "it is designed to approximate as closely as is feasible the actual cost of producing the merchandise if it were manufactured as expeditiously as could be done in a normal manner for delivery on the date of export." Our appellate court therein held that the statute fixes the cost of materials with respect to a definite time—the price at which the component materials could last have been purchased so that these materials could be delivered

by the time of commencing manufacture. *Id.* at 93, 96–97. *See Swizzels, Inc. v. United States*, 38 Cust.Ct. 644, 649 (1957).

In *Swizzels, Inc.*, the plaintiff claimed that a drawback receivable upon exportation of its product should reduce the cost of production calculated under § 1402(f). The court, citing *Charles Stockheimer*, determined that "since the cost of materials is determined as of a specified time, *which is at or prior to the date of manufacture of the merchandise*, refunds which may be received thereafter, if the merchandise is exported, may not be deducted." *Id.* at 649 (emphasis added). The court, accordingly, did not deduct the amount of the drawback from the cost of the materials.

Plaintiff, in *Schweppes v. United States*, 43 Cust.Ct. 608 (1959), paid an excise tax to the British Government for the purchase of ethyl alcohol used in the production of flavoring extract. Upon exportation of the finished merchandise, the government remitted the full amount of the tax. Concurring in the interpretation of § 1402(f)(1) given by *Charles Stockheimer*, the court stated that "the element of 'cost of materials' is to be ascertained as of the time when such materials were or could have been purchased for the production of the particular merchandise under consideration." *Id.* at 612. Since the cost of the ethyl alcohol included the excise tax at the time of purchase, the court held:

> that is the time made relevant by the statute, it is immaterial that, upon a later date, the contingency of exportation having been met, the tax was refunded. We are not called upon to ascertain, and, therefore, may not properly consider, what the manufacturer may regard as his ultimate or true costs. Neither may we inquire into the effects of any actions taken by the manufacturer to reduce his initial costs.

*Id.* at 612–13. The British excise tax rebate could not be deducted from the cost of materials within § 1402(f)(1).

In the instant action, the Director of the Classification and Value Division of the United States Customs Service issued three

opinions relating to the appraisement of the subject merchandise from the United Kingdom.[4] The final appraisement opinion evaluates *Charles Stockheimer* and *Schweppes* and concludes that:

the key factor was not that the drawback or refund was received upon or after exportation, but rather that such payments became effective after the merchandise had been manufactured.... What is relevant is that these payments are legally due after the time required by statute to fix the cost of materials, i.e., after the latest time which would permit production of the merchandise.

On the basis of this internal advice, the Customs Service determined that Mars received the CAP rebate *after* "the latest time" which would permit production of the subject goods, and therefore held that the refunds could not reduce the cost of materials.

By plaintiff's own affidavit, Mars admits that it does not complete the export control record until approximately two days after the manufacture of Skittles and, in the case of Pacers Punch, "on the date of manufacture or shortly thereafter." Assuming, as the plaintiff contends, that the right to receive a CAP rebate vests upon completion of the export control record, plaintiff, nevertheless, could not qualify for an export rebate until after the date of manufacture of the products. Since the cost of materials is determined as of a specified time, which is at the time when such materials were or could have been purchased for the production of the particular merchandise under consideration, an alleged vesting of the CAP refund, after the date of manufacture, would preclude its deduction from the cost of materials. *See* 43 Cust.Ct. at 612.

Defendant has filed a counterclaim alleging that the CAP refunds are "receipts" in excess of expenses and therefore, constitute "profits" for the purposes of § 1402(f)(4). Defendant also notes that Mars treats the rebates as receivable assets on its books. Plaintiff responds that the CAP payments are part of EEC public policy and neither serve nor are intended to provide an addition to profit.

Since the Customs Service determined that the CAP rebates could not be utilized to reduce the statutory cost of materials, it liquidated these entries assessing the cost of materials without any reduction for these rebates. Defendant now requests that this court remand this matter to the Customs Service for reliquidation to provide for an addition for profit over and above the cost of production the Customs Service found upon the original liquidation of the subject merchandise. Defendant has the burden of proving that the CAP rebate is an addition to profit calculated after manufacture of the subject merchandise. *See* 56 CCPA at 124, 412 F.2d at 250.

In those Customs cases involving drawbacks, rebates, and refunds, there has been no suggestion that the payments received were to be construed as profits in determining the cost of production. Notwithstanding the fact that these types of rebates cannot serve as deductions from the cost of materials, their assessment as profits in calculating the dutiable value of the subject goods has not been determined as the necessary alternative. *See Schweppes; Swizzels; cf. Adolph Goldmark and Sons Corp. v. United States,* 31 CCPA 6 (1943). In fact, in *United States v. Alfred Dunhill of London, Inc.,* 32 CCPA 187 (1945), the court noted that a purchase tax "remains as a separate and distinct item payable as such, and therefore cannot be said to constitute an element" of the cost of production. 32 CCPA at 189.

The CAP rebate is a separate and distinct item within the realm of EEC public policy. CAP refunds are part of a governmental program intended to equalize the competitive position of EC and non-EC manufacturers who sell sugar products on the world market. Plaintiff and defendant

---

**4.** Reconsideration of Internal Advice No. 173/79 (U.S. Customs Service, February 12, 1981); Reconsideration of Internal Advice No. 173/79 (U.S. Customs Service, February 27, 1980); Internal Advice No. 173/79 (U.S. Customs Service, September 21, 1979).

admit that the CAP rebate is a *grant* intended to wipe out a specific competitive disadvantage. Grants or subsidies are not designated as statutory elements of the cost of production under § 1402(f). Whether the CAP rebates might constitute grants and cause injury or threat of injury to an American industry is not an issue before this court. No relationship exists between the rebate made by the United Kingdom to Mars, conforming to the general policy of equalizing the world sugar price with the EEC sugar price, and the determination of profit as contemplated by the cost of production statute, 19 U.S.C. § 1402(f).

Defendant has failed to meet its burden of proving that the CAP rebates are additions to profit for the purposes of § 1402(f).

Accordingly, it is hereby

ORDERED, ADJUDGED, and DE-CREED

1. that plaintiff's motion for summary judgment be and is hereby denied.

2. that defendant's cross motion for summary judgment in opposition to plaintiff's motion be and is hereby granted.

3. that defendant's motion for summary judgment on defendant's counter-claim be and is hereby denied, and it is further

ORDERED, ADJUDGED, and DE-CREED that the CAP rebate shall not be deducted from the dutiable value of the subject merchandise in determining the cost of materials for the purposes of former 19 U.S.C. § 1402(f)(1) and that the appraisement of the Customs Service with respect to the subject merchandise is accordingly affirmed.