107 F.3d 1556
 18 ITRD 2441
 CAMPBELL SOUP COMPANY, INC., Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 94-1435.
 United States Court of Appeals,
Federal Circuit.
 March 3, 1997.
Rehearing Denied; Suggestion for Rehearing In Banc Declined
July 8, 1997.
 
 Ronald W. Gerdes, Sandler, Travis & Rosenberg, P.A., Washington, D.C., argued, for plaintiff-appellant. With him on the brief was Teresa M. Polino.
 Bruce N. Stratvert, Civil Division, Commercial Litigation Branch, Department of Justice, International Trade Field Office, New York City, argued, for defendant-appellee. With him on the brief was Joseph I. Liebman. Also on the briefs were Frank W. Hunger, Assistant Attorney General of the United States, David M. Cohen, Director, Washington, D.C. Of counsel on the brief was Jack D. Diamond, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, New York City.
 Before ARCHER, Chief Judge, and NEWMAN and MAYER, Circuit Judges.
 Opinion for the court filed by Chief Judge ARCHER. Concurring-in-part/dissenting-in-part opinion filed by Circuit Judge NEWMAN.
 ARCHER, Chief Judge.
 
 
 1
 Campbell Soup Company, Inc. (Campbell) appeals the summary judgment of the United States Court of International Trade, Campbell Soup Co. v. United States, 853 F.Supp. 1443 (Ct. Int'l Trade 1994), holding that Campbell was not entitled to deduct Mexican tax rebates or freight costs in determining the computed value under 19 U.S.C. § 1401a(e) (1994) of imported merchandise for assessment of import duties. We affirm-in-part and reverse-in-part.
 
 BACKGROUND
 
 2
 Campbell imports tomato paste from a wholly-owned Mexican subsidiary, Sinalopasta, S.A. de C.V. (Sinalopasta). Upon entry into the United States, Campbell submitted a Cost Submission, Customs Form 247 (CF 247), to the United States Customs Service (Customs), which set forth the computed value of the merchandise. In calculating the computed value of the imported merchandise on the CF 247, Campbell deducted $1,327,284 in rebated internal Mexican taxes received from the Mexican government. It also reported certain freight costs as part of the cost of materials used to produce the merchandise. Customs questioned the treatment of these items on the CF 247 and had its Office of Regulatory Audit (ORA) verify the data through an audit of the accounting books and records of Campbell and Sinalopasta.
 
 
 3
 Under a Mexican export program, "Certificado Export de Devolucion de Impuestos" (CEDIS), the Mexican government issued tax certificates to producers in amounts equal to a percentage of the value of exported merchandise. The recipients can apply the certificates as credit toward payment of Mexican taxes. On its financial records, Sinalopasta recorded the CEDIS rebates as "miscellaneous profit." On CF 247, the rebates were deducted from its "general expenses."
 
 
 4
 When ORA audited the financial records, it concluded that Sinalopasta had improperly deducted the tax rebates from expenses on the CF 247. It further determined that the transportation costs should have been treated as selling expenses rather than material costs and were not deductible in arriving at computed value. Customs adopted the findings of the ORA audit.
 
 
 5
 Campbell filed a protest in which it contended that the rebates of internal Mexican taxes were applicable to materials used to produce the finished tomato paste and should have been allowed as a reduction of material cost in accordance with 19 U.S.C. § 1401a(e)(2)(A) in arriving at computed value. Campbell also protested Customs' determination that $416,324 for the transportation of the finished tomato paste from Sinalopasta's loading dock in Mexico to the United States border was properly regarded as selling expenses and should not be allowed as a deduction in arriving at the computed value of the merchandise. These freight costs had been treated as "production costs" on Sinalopasta's financial records and as "material component costs" on the CF 247. Although admitting that the way freight costs had been reported on the financial records complied with generally accepted accounting principles in Mexico and that the original CF 247 had erroneously treated freight as part of material costs, Campbell argued in its protest that the freight should have been deducted in arriving at computed value.
 
 
 6
 When the protest was denied, Campbell appealed to the Court of International Trade. The court entered summary judgment in favor of Customs.
 
 DISCUSSION
 
 7
 A grant of summary judgment by the Court of International Trade is reviewed "for correctness as a matter of law, deciding de novo the proper interpretation of the governing statute and regulations as well as whether genuine issues of material fact exist." St. Paul Fire & Marine Ins. v. United States, 6 F.3d 763, 767 (Fed.Cir.1993). When reviewing a decision by the Court of International Trade, this court applies anew the standard of review applied by that court to the agency's decision. Kemira Fibres Oy v. United States, 61 F.3d 866, 871 (Fed.Cir.1995).[1] A presumption of correctness is accorded to the decision of Customs, Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed.Cir.1984), and to overcome this presumption, the importer has the burden of proof. St. Paul Fire & Marine, 6 F.3d at 767.
 
 I.
 
 8
 A. The first issue concerning the appraisement of the imported merchandise involves the proper treatment of internal Mexican taxes applicable to the cost of raw materials purchased by Sinalopasta which were rebated upon exportation of the finished tomato paste. Campbell asserts that in determining the computed value of the merchandise these CEDIS rebates should have been deducted from Sinalopasta's cost of materials and that its profits should not have included the rebates. Campbell argues that when Customs disallowed the deduction of the rebates from Sinalopasta's expenses it did not correspondingly reduce the profits by the same amounts. As a result, the appraised value of the merchandise was increased by the amount of the rebates, instead of being reduced.
 
 
 9
 Both parties agree that the merchandise in question is properly subject to appraisement under the provisions for computed value found at 19 U.S.C. § 1401a(e) (1994). The formula for determining the computed value of imported merchandise for duty assessment purposes is set forth in the statute, as follows:
 
 
 10
 (1) The computed value of imported merchandise is the sum of--
 
 
 11
 (A) the cost or value of the materials and the fabrication and other processing of any kind employed in the production of the imported merchandise;
 
 
 12
 (B) an amount for profit and general expenses equal to that usually reflected in sales of merchandise of the same class or kind as the imported merchandise that are made by the producers in the country of exportation for export to the United States;
 
 
 13
 (C) any assist, if its value is not included under subparagraph (A) or (B); and
 
 
 14
 (D) the packing costs.
 
 
 15
 19 U.S.C. § 1401a(e)(1) (1994). The statute also provides for an exclusion of certain refunded taxes in calculating the cost or value of the materials under paragraph (1)(A):
 
 
 16
 (2) For purposes of paragraph (1)--
 
 
 17
 (A) [t]he cost or value of materials under paragraph (1)(A) shall not include the amount of any internal tax imposed by the country of exportation that is directly applicable to the materials or their disposition if the tax is remitted or refunded upon the exportation of the merchandise in the production of which the materials were used.
 
 
 18
 19 U.S.C. § 1401a(e)(2) (1994).
 
 
 19
 The Court of International Trade specifically found that "Sinalopasta received [CEDIS] rebates of $1,327,284 from the Mexican government for domestic taxes the company had paid on manufacturing input materials," citing the parties' agreed statement of facts. These statutory provisions are unambiguous; remitted or refunded internal taxes directly applicable to materials, like the CEDIS rebates at issue in this case, are to be excluded from the cost or value of the material calculated under paragraph (1)(A). Under the plain language of sections 1401a(e)(1)(A) and (2)(A), therefore, Customs was required to exclude the CEDIS rebates from the cost or value of materials in determining the computed value of the imported merchandise.
 
 
 20
 The Court of International Trade did not consider adequately the provisions of sections 1401a(e)(1)(A) and (2)(A), stating that Campbell's reliance on the latter section was misplaced because it "seeks a deduction from 'general expenses,' the calculation of which depends on the application of § 1401a(e)(1)(B), (e)(2)(B)."[2] While it is true that Campbell deducted the CEDIS rebates from general expenses on CF 247 and Customs disallowed such deduction, as noted in footnote 4 of the court's opinion, the disallowance of the deduction from expenses does not appear to have been challenged in Campbell's protest to Customs. Rather, the record before Customs indicates that Campbell sought a deduction of the CEDIS rebates from the cost or value of materials. Thus, it was error for the court not to consider the applicability of sections 1401a(e)(1)(A) and (2)(A).
 
 
 21
 Similarly, the government in its brief in this appeal does not directly respond to Campbell's argument as to the deductibility of the CEDIS rebates from material costs, but instead repeats the court's holding that the rebates were not deductible from general expenses and urges affirmance on this basis.
 
 
 22
 Campbell argues on appeal that "the fact that the deduction on the [CF 247] was made erroneously to general expenses and not to material costs, does not now preclude a judicial finding that a deduction to material costs is appropriate." Under the circumstances of this case, we agree. The question of whether the CEDIS rebates were properly deductible under sections 1401a(e)(1)(A) and (2)(A) was presented to Customs during the protest stage and was ruled on by Customs. It was, thus, properly raised as an issue before the Court of International Trade.
 
 
 23
 We conclude that the Court of International Trade erred in not allowing the CEDIS rebates as a reduction of material costs for purposes of the computed value calculation. Accordingly, the summary judgment on this issue in favor of the United States is reversed.
 
 
 24
 B. The Court of International Trade also ruled that because Sinalopasta had allocated the CEDIS rebates as "miscellaneous profit and loss" on its financial records and as "profit" on the CF 247, Customs properly did not disturb that treatment for purposes of the computed value calculation. See 19 U.S.C. § 1401a(e)(1)(B) (1994). Campbell argues that Sinalopasta was not required to include the CEDIS rebates as profit for purposes of the computed value calculation. It is unnecessary to dwell on this issue because the Court of International Trade correctly decided that sections 1401a(e)(1)(B) and (2)(B) permitted no adjustment to Sinalopasta's profit and general expenses as reported in its financial records. Section 1401a(e)(2)(B) provides as follows:
 
 
 25
 [T]he amount for profit and general expenses under paragraph (1)(B) shall be based upon the producer's profits and expenses, unless the producer's profits and expenses are inconsistent with those usually reflected in sales of merchandise of the same class or kind as the imported merchandise that are made by producers in the country of exportation for export to the United States....
 
 
 26
 The amount of profit and general expenses under paragraph (1)(B) must, therefore, be based on the producer's profits and expenses unless they are inconsistent with the usual profits and losses of producers of similar merchandise exported to the United States. Campbell has not made such a showing in this case. Thus, section 1401a(e)(1)(B) of the statute does not permit an exclusion for CEDIS rebates from the profit of Sinalopasta as recorded in its financial statements.
 
 
 27
 Campbell makes two principal arguments, unrelated to the statutory language, to urge that CEDIS rebates should not increase profits. Neither is persuasive. Campbell first contends that under a prior law certain rebates were held to be in the nature of a "grant intended to wipe out a specific competitive disadvantage," M & M/Mars Snackmaster Div. of Mars Inc. v. United States, 587 F.Supp. 1075, 1079 (Ct. Int'l Trade 1984). This decision is inapposite because the computed value statute treats profits in an entirely different manner than the prior law. Under current law, Customs' use of Sinalopasta's actual general expenses and profits must be upheld where there has been no showing of inconsistency with the usual profit calculation of other producers/exporters of similar merchandise.
 
 
 28
 Next, Campbell asserts that inclusion of CEDIS rebates as a part of Sinalopasta's profits for purposes of the computed value calculation is improper because this violates international commitments under the General Agreement on Tariffs and Trade (GATT). This claim was not raised below and, in any event, is not determinative. See Suramerica de Aleaciones Laminadas C.A. v. United States, 966 F.2d 660, 667-68 (Fed.Cir.1992) ("While we acknowledge Congress's interest in complying with U.S. responsibilities under the GATT, we are bound not by what we think Congress should or perhaps wanted to do, but by what Congress in fact did. The GATT does not trump domestic legislation; if the statutory provisions at issue here are inconsistent with the GATT, it is a matter for Congress and not this court to decide and remedy.").
 
 
 29
 Accordingly, summary judgment on this issue in favor of the United States is affirmed.
 
 II.
 
 30
 The second appraisement issue is whether the freight costs associated with shipping the tomato paste from Sinalopasta's loading dock in Mexico to the United States border should be included in the computed value calculation. The Court of International Trade held that because Sinalopasta recorded freight costs as a general expense in its financial records and because this treatment was consistent with generally accepted accounting principles in Mexico, freight costs had to be included in arriving at computed value.
 
 
 31
 As previously discussed, section 1041a(e)(2)(B) provides that profit and general expenses under paragraph (1)(B) shall be based upon the producer's profits and expenses, unless they are inconsistent with the usual profits and expenses of producers of similar merchandise exported to the United States. There is no question that freight costs were included in general expenses in Sinalopasta's financial records. Moreover, there was no evidence that treating the freight costs as general expenses was inconsistent with the way other producers in Mexico treated such costs. In fact, the court specifically found that Sinalopasta's treatment of these costs complied with generally accepted accounting principles in Mexico. Accordingly, the court properly held that sections 1401a(e)(1)(B) and (2)(B) required the inclusion of the freight costs in the computed value compilation.
 
 
 32
 Campbell argues that because transportation charges are excluded from other statutorily prescribed value calculations under 19 U.S.C. § 1401a(b) and 1401a(d), they should be excluded from computed value. The fact that Congress explicitly excluded transportation costs from the transaction value method in section 1401a(b)(4)(A), and from the deductive value method in section 1401a(d)(3)(A)(ii), actually undermines, rather than supports, Campbell's position. The statutory formula that Congress enacted in section 1401a(e) for computed value is very precise. It contains a detailed itemization of what is to be included or excluded in the calculation of computed value. Because Congress did not expressly exclude transportation costs from computed value, as it did for the transaction and deductive value methods, Campbell's argument for exclusion of such costs from the computed value computation is unpersuasive.
 
 
 33
 Campbell also argues that the freight costs at issue are not general expenses under section 1401a(e)(1)(B) and therefore should be excluded from the calculation of computed value. However, as the Court of International Trade properly determined, profits and general expenses, according to the unambiguous statutory language, must be determined according to the producer's own financial records. Thus, Campbell's attempt to recharacterize these costs cannot be accepted absent a clear showing that Sinalopasta's treatment conflicts with the way such expenses are treated by other producers. As noted, Campbell has not done this and the court's finding of consistency with generally accepted accounting principles indicates the characterization of these expenses was correct.
 
 
 34
 Finally, Campbell argues that the case law supports its contention that the disputed charges are not dutiable. Although the cases cited by Campbell involved an earlier version of the statute, the government does not contend that there is a significant difference in the statutory language.[3] However, we are not persuaded that the cases cited by Campbell are controlling.
 
 
 35
 In R.J. Saunders & Co. v. United States, 26 Cust.Ct. 578, R.D. 7973 (1951), the court held that the costs of transporting the merchandise from Czechoslovakia (the country of exportation) to Hamburg, Germany (the most convenient port for shipment of the exported goods to the United States) should not be included in the dutiable value. 26 Cust.Ct. at 580. The Customs Court concluded that "the charge for freight from the country of exportation ... to another country is not properly a part of the cost of production under the statutory formula." Id. at 581. This conclusion was based on the fact that the cost of production calculation should be an attempt to quantify the value of the merchandise in the country of production. Id. The Customs Court held that transportation charges incurred to ship the merchandise outside of the country of exportation were not a part of the merchandise's dutiable value. Id.
 
 
 36
 The R.J. Saunders court did not specifically consider the problem at issue in this case, namely, whether inland freight charges incurred entirely within the borders of the exporting country should be included within the computed value. In an earlier case, United States v. Zellerbach Paper Co., 28 C.C.P.A. 303, 308-10, C.A.D. 159 (1941), the court held that the dutiable value of merchandise should reflect the freight costs the producer incurred to transport it to the port in the country of origin. R.J. Saunders distinguished Zellerbach, in part on the ground that the port in Zellerbach, unlike the port in R.J. Saunders, was within the country of exportation. R.J. Saunders, 26 Cust.Ct. at 580. Here, Sinalopasta seeks to deduct freight costs for transportation entirely within Mexico. We conclude that these charges are properly included in the computed value calculation as a general expense pursuant to section 1401a(e)(2)(B), as discussed above. Nothing in R.J. Saunders compels a different conclusion.
 
 
 37
 Campbell's final argument that the statutory scheme at issue is inconsistent with the GATT provisions is rejected here for the same reasons as set forth above. Any inconsistency between the statute and GATT is a problem for Congress to resolve. See Suramerica, 966 F.2d at 667-68.
 
 
 38
 Accordingly, we affirm the grant of summary judgment by the Court of International Trade in favor of the government on this issue.
 
 
 39
 No costs.
 
 
 40
 AFFIRMED-IN-PART AND REVERSED-IN-PART.
 
 
 41
 PAULINE NEWMAN, Circuit Judge, concurring in part and dissenting in part.
 
 
 42
 I concur in Parts I.A and II. I dissent, respectfully, from Part I.B, for it is contrary to the General Agreement on Tariffs and Trade (GATT), as implemented by the statute, to treat the rebated Mexican tax as profit, and dutiable.
 
 
 43
 The issue is focussed on the Customs calculation of the computed value of tomato paste manufactured by the Campbell Soup subsidiary Sinalopasta in Mexico and exported to the United States. The computed value depends on the treatment of rebates of Mexican tax under the CEDIS program. Sinalopasta paid the Mexican tax when it purchased the tomatoes, and the Mexican government rebated the tax when Sinalopasta exported the tomato paste.
 
 
 44
 The Customs Service required that (1) the tax rebates could not be deducted from the cost of materials, and (2) the rebates must be included as "profit" in the computed value calculation. The panel majority holds, and I agree, that the tax rebates are properly deducted from the cost of materials. However, I do not share the conclusion that the tax rebates must be included as profit on sales of the exported tomato paste, thus raising the dutiable value by the amount of the tax rebates. The statute requires otherwise.
 
 
 45
 19 U.S.C. § 1401a(e)(1) provides the formula for determining the computed value of imported merchandise for duty assessment purposes:
 
 
 46
 (1) The computed value of imported merchandise is the sum of--
 
 
 47
 (A) the cost or value of the materials and the fabrication and other processing of any kind employed in the production of the imported merchandise;
 
 
 48
 (B) an amount for profit and general expenses equal to that usually reflected in sales of merchandise of the same class or kind as the imported merchandise that are made by the producers in the country of exportation for export to the United States;
 
 
 49
 (C) any assist, if its value is not included under subparagraph (A) or (B); and
 
 
 50
 (D) the packing costs.
 
 
 51
 Subparts (C) and (D) are not relevant to this case. Therefore, for purposes of analyzing whether the CEDIS tax rebates should be included in profit for the computed value calculation, we are concerned only with the (A) cost of materials and (B) profit. The statute provides guidance concerning calculation of (A) and (B):
 
 
 52
 (2) For purposes of paragraph (1)--
 
 
 53
 (A) the cost or value of materials under paragraph (1)(A) shall not include the amount of any internal tax imposed by the country of exportation that is directly applicable to the materials or their disposition if the tax is remitted or refunded upon the exportation of the merchandise in the production of which the materials were used; and
 
 
 54
 (B) the amount for profit and general expenses under paragraph (1)(B) shall be based upon the producer's profits and expenses, unless the producer's profits and expenses are inconsistent with those usually reflected in sales of merchandise of the same class or kind as the imported merchandise that are made by producers in the country of exportation for export to the United States, in which case the amount under paragraph (1)(B) shall be based on the usual profit and general expenses of such producers in such sales, as determined from sufficient information.
 
 
 55
 19 U.S.C. § 1401a(e)(2).
 
 
 56
 I agree with the panel majority that subsection (2)(A) requires that the rebated tax be deducted from the cost of materials. This produces a corresponding decrease in computed value under § 1401a(e)(1).
 
 
 57
 However, by requiring Sinalopasta to add the tax rebate to its profit, the result is the same as if there had been no rebate. The computed value is the same as if Sinalopasta had paid the full Mexican tax on raw materials and received no rebate. This contravenes not only the statute, but the purpose of the GATT provision whereby nations can provide a tax incentive for exports without finding that the incentive has been neutralized by the importing nation.
 
 
 58
 The panel majority states that "the Court of International Trade correctly decided that sections 1401a(e)(1)(B) and (2)(B) permitted no adjustment to Sinalopasta's profit and general expenses as reported in its financial records." I can not find such subject matter in sections 1401a(e)(1)(B) and (2)(B). Sinalopasta accounted for the rebated Mexican tax under "miscellaneous profit and loss." Use of such a catchall accounting category can not override the application of a United States statute governing Customs' treatment. The accounting form does not convert the CEDIS rebates into profit when they are not profit, but a remittal of taxes paid. A cost not incurred because it is rebated does not automatically establish a corresponding increase in profit.
 
 
 59
 The statute requires that profit and general expenses be "based upon the producer's profit and expenses" in the computed value calculation. The statute provides for the reduction of the cost of materials by the amount of the rebates; it does not thereafter neutralize the reduction by adding the rebates to profit. In M & M/Mars Snackmaster Div. of Mars, Inc. v. United States, 7 C.I.T. 249, 587 F.Supp. 1075 (1984), the Court of International Trade discussed how a similar tax rebate in the European Economic Community should be treated under a similar statute for calculating the cost of production:
 
 
 60
 In those Customs cases involving drawbacks, rebates, and refunds, there has been no suggestion that the payments received were to be construed as profits in determining the cost of production....
 
 
 61
 ... No relationship exists between the rebate made by the United Kingdom to Mars, conforming to the general policy of equalizing the world sugar price with the EEC sugar price, and the determination of profit as contemplated by the cost of production statute....
 
 
 62
 587 F.Supp. at 1078-79. The panel majority dismisses this case as "inapposite" because it deals with a different statute. However, the tariff principle is the same. It is necessary to consider whether the rebates are, in fact, profit on the export sales, or simply a reduction in the cost of production. The cost of production statute at issue in M & M required that profit be a minimum of 8% of costs and expenses; the fact that the producer's actual profit figures were not used does not convert the rebates into profit. The court held that the rebates were not properly considered as profit in determining the cost of production.
 
 
 63
 Further, inclusion of the rebates in profit is inconsistent with the United States' obligation under the GATT. Article VII, section 3 of the GATT proscribes the imposition of duties on internal taxes to which the manufacturer is entitled to a refund:
 
 
 64
 § 3. The value for Customs purposes of any imported product should not include the amount of any internal tax, applicable within the country of origin or export, from which the imported product has been exempted or has been or will be relieved by means of a refund.
 
 
 65
 General Agreement on Tariffs and Trade, Oct. 30, 1947, 61 Stat. A-3, T.I.A.S. 1700, 55 U.N.T.S. 194. The panel majority states that this claim of inconsistency with the GATT "was not raised below and, in any event, is not determinative," citing Suramerica de Aleaciones Laminadas C.A. v. United States, 966 F.2d 660, 667-68 (Fed.Cir.1992) for the proposition that the "GATT does not trump domestic legislation; if the statutory provisions at issue here are inconsistent with the GATT, it is a matter for Congress and not this court to decide and remedy." However, the statute is not inconsistent with the GATT. It is the holding that the rebates must be included in profit that is inconsistent with the GATT.
 
 
 66
 The GATT requires that the rebates are not included in the valuation for Customs' purposes. This is negated by the court's holding that the rebates are included in profit for Customs' purposes. There is no suggestion that Congress enacted a statute contrary to the GATT provision. To the contrary, the statute requires an accounting procedure that reduces the cost of the goods; but on the court's requirement that the rebate be added back, as a separate item of profit, the computed value for Customs' purposes is as if there had been no rebate, and the trade benefit of the CEDIS program, as protected by the GATT, is eliminated.
 
 
 
 [1]
 But see Zenith Elec. Corp. v. United States, 99 F.3d 1576 (Fed.Cir.1996) (Plager, J. concurring, Rader, J. concurring) (suggesting that the de novo standard of review should be changed to a more deferential standard)
 
 
 [2]
 Although internal taxes, like the CEDIS rebates, are excluded from a calculation of the cost of materials, there is no similar provision excluding these taxes from the profit and general expenses calculation under section 1401a(e)(1)(B) and (2)(B)
 
 
 [3]
 The computed value standard in section 1401a(e) stems from the constructed value and cost of production standards which existed under the former law. See H.R.Rep. No. 317, 96th Cong., 1st Sess. 94 (1979)