**Slip Op. 01-140**

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

| | |
|---|---|
| _____ : | |
| FABRIQUE DE FER DE CHARLEROI S.A., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| THE UNITED STATES, : | |
| : | Court No. |
| Defendant, : | 98-02-00359 |
| : | |
| and : | |
| : | |
| BETHLEHEM STEEL CORPORATION and : | |
| U.S. STEEL GROUP, A UNIT OF : | |
| USX CORPORATION, : | |
| : | |
| Defendant-Intervenors. : | |
| _____: | |

[Commerce's Remand Results are affirmed in their entirety. Case dismissed.]


Barnes, Richardson & Colburn (Gunter von Conrad and Michael J. Chessler) for plaintiff, Fabrique de Fer de Charleroi S.A., currently Usinor Industeel, SA.

Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Velta A. Melnbrencis, Assistant Director); of counsel: Robert L. LaFrankie, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for the United States.

Dewey Ballantine LLP (Michael H. Stein, Bradford L. Ward and Rory F. Quirk) for defendant-intervenor Bethlehem Steel Corporation and defendant-intervenor U.S. Steel Group, a Unit of USX Corporation, currently United States Steel LLC.


Dated: December 4, 2001

**JUDGMENT**

## I.  Standard of Review

The Court will uphold Commerce's redetermination pursuant to the Court's remand unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (1994).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966).

## II.  Background

This case concerns Final Results of Redetermination Pursuant to Court Remand on Certain Cut-to-Length Carbon Steel Plate from Belgium ("Remand Results"), Fabrique de Fer de Charleroi S.A. v. United States ("Fabrique"), 25 CIT ___, 155 F. Supp. 2d 801 (2001), ensuing from Final Results of Antidumping Duty Administrative Review of Certain Cut-to-Length Carbon Steel Plate From Belgium ("Final Results"), 63 Fed. Reg. 2959 (Jan. 20, 1998), issued by the

United States Department of Commerce, International Trade Administration ("Commerce"). The Final Results, in turn, ensue from the antidumping duty order on cut-to-length carbon steel plate imported to the United States from Belgium during the 1995-96 period of review ("POR").

During the review, Commerce: (1) determined that the United States sale of the cut-to-length carbon steel plate by Fabrique de Fer de Charleroi S.A. ("FAFER") was a constructed export price ("CEP") sale, that is, a sale for which price had to be adjusted under subsections (c) and (d) of 19 U.S.C. § 1677a (1994) to account for FAFER's various direct and indirect selling expenses, see Fabrique, 25 CIT at ___, 155 F. Supp. 2d at 805; and (2) issued questionnaires to FAFER, seeking data on FAFER's indirect selling expenses related to FAFER's United States sale. In its responses to Commerce's questionnaires, FAFER stated that there were no indirect selling expenses incurred by FAFER in the United States or, alternatively, that all indirect selling expenses had been allocated based on information in FAFER's response. See id., 25 CIT at ___, 155 F. Supp. 2d at 804. Missing the information on FAFER's indirect selling expenses, Commerce, in reaching the applicable determination, resorted to facts available, see id., 25 CIT at ___, 155 F. Supp. 2d at 805, specifically to the commission rate FAFER normally paid FAFER's United States affiliates. See

Final Results, 63 Fed. Reg. at 2962-63.

The Court affirmed Commerce's use of facts available, see Fabrique, 25 CIT at ___, 155 F. Supp. 2d at 808, but ordered Commerce to choose another facts available substitute for FAFER's indirect selling expenses because the record indicated that Commerce had determined that no commission was actually paid on the United States sale in question. See id., 25 CIT at ___, 155 F. Supp. 2d at 809-10. The Court noted that

> [it] share[d] FAFER's bewilderment about Commerce's choice to use the only piece of data admittedly unrelated to the transaction at issue as a proxy for FAFER's indirect selling expenses. There could be no rational relationship between a matter and . . . data that expressly does not apply to that matter under the particular facts of the case.

Id. (internal citations omitted).

In accordance with the Court's remand, Commerce recalculated CEP resorting to another facts available, namely, selling, general and administrative expenses ("SG&A") of FAFER's United States subsidiary, Charleroi USA ("Charleroi"). See Remand Results at 3-4.

### III. Contentions of the Parties

FAFER asserts that Charleroi's SG&A are unrelated to indirect selling expenses actually incurred by FAFER. See Pl.'s Comments Final Results Redetermination Pursuant Ct. Remand ("Pl.'s

Comments") at 2-3; Pl.'s Rebuttal Comments Final Results Redetermination Pursuant Ct. Remand ("Pl.'s Rebuttal") at 2. Specifically, FAFER contends that Charleroi's SG&A: (1) bear no rational relationship to the actual expenses incurred by FAFER; (2) cannot be representative of the sale transaction that took place in 1996 because Charleroi's statement covers the 1995 calendar year; (3) is preempted by the data provided by FAFER in FAFER's responses to Commerce's questionnaires. See generally, Pl.'s Comments, Pl.'s Rebuttal. Therefore, FAFER concludes that Commerce's decision to use Charleroi's SG&A as a substitute for FAFER's United States indirect selling expenses is a violation of this Court's remand order in Fabrique, 25 CIT at ___, 155 F. Supp. 2d at 813. FAFER further asserts that FAFER's indirect selling expenses, if any, were minimal. See Pl.'s Rebuttal at 4.

Commerce contends that Commerce's use of Charleroi's SG&A as a facts-available proxy for FAFER's United States indirect selling expenses was in accordance with the Court's remand in Fabrique, 25 CIT at ___, 155 F. Supp. 2d at 813. See Remand Results at 3-5, Def.'s Rebuttal Pl.'s Comments Final Results Redetermination Pursuant Ct. Remand ("Def.'s Rebuttal") at 4-8. Bethlehem Steel Corporation and U.S. Steel Group support Commerce's reliance on Charleroi's SG&A and point out that the case was remanded to Commerce "for one--and only one--purpose: 'to examine the record to

determine what data should be used as a substitute for FAFER's indirect selling expenses'" and not to "relitigate the merits of [Commerce's] underlying determination regarding FAFER's U.S. indirect selling expenses." <u>See</u> Def.-Intervenors' Rebuttal Comments Pl.'s Comments Final Results Redetermination Pursuant Ct. Remand ("Def.-Intervenors' Rebuttal") at 4.

## III. Analysis

### A.   Reasonableness of Facts Available

The main argument presented by FAFER is that: (1) the facts available chosen by Commerce "bear[] no rational relationship to [the] expenses <u>actually</u> incurred," Pl.'s Rebuttal at 2 (emphasis in original); and (2) the only reasonable facts available that could be used in the given case "is the amount originally calculated in the Sales Verification Report." <u>Id.</u> at 4.

FAFER misreads the purpose of the Court's remand in <u>Fabrique</u>, 25 CIT at ___, 155 F. Supp. 2d at 813, as well as the purpose and gist of the term "facts available." Facts available are, by definition, a proxy figure used by an agency when the agency lacks actual data necessary for the calculation.[1]  Indeed, if the agency

---

[1]

"In general[,] [i]f . . . necessary information is not available on the record, or . . . an interested party or any other person . . . fails to provide such information . . . in the form and manner requested . . . or . . . provides such information but

had the actual figure and failed to use it, such action would be a violation of the agency's statutory duty. Conversely, if the agency lacks the actual figure, a reading of the statute as a requirement to use "facts available" that should be, de facto, actual data would render the statutory purpose of 19 U.S.C. § 1677e obsolete. Indeed, it would be anomalous to require the agency to use the "de facto actual data" where the agency has none; such scheme would serve as an incentive to members of the regulated industry to conceal the actual data and obtain a premium if they could succeed in obstructing the agency's operation while keeping a cooperative disguise. In sum, reliance on "facts available" inherently implies the usage, wholly or partly, of surrogate data that is not actual. Consequently, in the case at bar, if "the amount originally calculated in the Sales Verification Report," Pl.'s Rebuttal at 4, does not include all of FAFER's possible indirect selling expenses in the given transaction,[2] Commerce must

---

the information cannot be verified . . . , [Commerce] shall . . . use the facts otherwise available in reaching the applicable determination . . . ." 19 U.S.C. § 1677e(a) (1994).

[2] FAFER asserts "[t]he amount that should serve as a proxy for [FAFER's United States] indirect selling expenses is zero because of the circumstances of the sale in question." Pl.'s Rebuttal at 4. In support of this position, FAFER points out that during the transaction at issue "FAFER did not follow [FAFER's] general practices," and Commerce verified the fact that "the particular sale in question [is] not . . . a normal sale, since it was a single sale." Pl.'s Comments at 1-2. FAFER further adds that the transaction at issue was unique because of the fact that Charleroi had minimal participation in the sale. Id. at 2.

resort to facts available, that is, data necessarily other than the
amount designated in the Sales Verification Report.

The issue, therefore, is what facts available would constitute
reasonable surrogate data.  Admittedly, there cannot be a bright-
line test or all-inclusive definition.  Rather, the issue shall be

---

This very last claim was disputed by Commerce which noted that

> [Commerce] has determined that [Charleroi] did act as
> more than a processor of sales documents and a
> communications link between the unaffiliated U.S.
> customer and FAFER . . . .  Although FAFER sets minimum
> list prices, [Charleroi] negotiates the sale with the
> customer. . . . [Charleroi] essentially negotiates all
> sales in accordance with FAFER's minimum price list and
> the sales take place in the United States, not in
> Belgium.

Preliminary Results of Antidumping Duty Administrative Review of
Cut-to-Length Carbon Steel Plate From Belgium, 62 Fed. Reg. 48,213,
48,215 (Sep. 15, 1997) (citations omitted).

Thus, Commerce determined that Charleroi's "participation was
actually so significant as to warrant classifying the sale as a CEP
sale."  Remand Results at 6.  Consequently, Commerce issued
questionnaires to FAFER and, missing the information on FAFER's
indirect selling expenses, resorted to the facts available.

While the Court does not share Bethlehem and U.S. Steel
Group's opinion that FAFER is attempting to relitigate the
applicability of facts available (indeed, facts available equal to
zero would yield the same net result as the decision that facts
available do not apply), the Court finds that FAFER is not
assailing the reasoning but rather the result reached by Commerce,
which is outside the Court's standard of review.  It is the
province of an agency and not the Court to examine the record and
reach a conclusion on the issue whether the particular sale
involves indirect selling expenses. See Writing Instrument Mfrs.
Ass'n, Pencil Section v. United States, 21 CIT 1185, 1195, 984 F.
Supp. 629, 639 (1997).

decided on a case-by-case basis.  The Court, however, pointed out that reasonable surrogate data is "'the most reasonable estimate,' . . . that is, the estimate most rational under the circumstances . . . ." among the entire data available on the record.  Fabrique, 25 CIT at ___ n.4, 155 F. Supp. 2d at 810 n.4 (emphasis omitted). Moreover, "[t]he mere possibility that [a random figure chosen] could be an amount near the amount [that would be] arrived [at] on the basis of [reasonable surrogate data]" cannot validate that random figure.  Id.  Therefore, the Court holds that: (1) surrogate data does not have to be necessarily related to the data missing; and (2) it is permissible to analogize the missing item to an item from the groups that are probably present in the transaction but not to an item from the groups that are admittedly not a part of the transaction.  Indeed, any conclusion otherwise would be a perfect sophism; Commerce, then, would be required to derive surrogate data from the very data missing, wholly or partly, in other words, to fasten Commerce's calculations to a vacuum.

This is exactly the point misinterpreted by FAFER.  FAFER reads Fabrique, 25 CIT at ___, 155 F. Supp. 2d at 810, to mean that the proxy figure shall bear a "rational relationship to any indirect selling expenses actually incurred" by FAFER.  Pl.'s Comments at 2 (emphasis in original).  The Court, however, remanded Fabrique, 155 F. Supp. 2d. 801, not because Commerce failed to use

a surrogate figure related to the <u>expenses actually incurred</u> by FAFER, but rather because Commerce chose to use a figure that admittedly could not have been analogized with the data missing in the transaction under review.  <u>See id.</u>, 25 CIT at ___, 155 F. Supp. 2d 809-10.


### B.    Charleroi's SG&A as Facts Available

All FAFER's United States sales or other operations are made through Charleroi.  <u>See</u> <u>Remand Results</u> at 7, Comment 1 (quoting FAFER's Questionnaire Response at 3, Oct. 21, 1996).  Charleroi's financial statement covers the period from January 1, 1995, through December 31, 1995, that is, the period overlapping with the POR at issue.  In addition, Charleroi's financial statement provides data on Charleroi's SG&A expenses, that is, the ratio of Charleroi's general expenses to the cost of manufacturing.  <u>See</u> <u>Magnesium Corp. of Am. v. United States</u>, 166 F.3d 1364, 1371 (Fed. Cir. 1999). General expenses can encompass many items, including such common ones as overhead and such occasional ones as financial losses or domestic freight.  <u>See, e.g.</u>, <u>American Silicon Techs. v. United States</u>, 261 F.3d 1371 (Fed. Cir. 2001); <u>SKF USA, Inc. v. United States</u>, 254 F.3d 1022 (Fed. Cir. 2001); <u>Campbell Soup Co. v. United States</u>, 107 F.3d 1556 (Fed. Cir. 1997).

The missing data at issue is FAFER's indirect selling

expenses.   Indirect selling expenses may include salespersons'
salaries, warehousing, personnel assistance, pre-sale home-market
transportation expenses, expenses incurred by a foreign
manufacturer on behalf of its related United States importer, and
so on.   See generally, Torrington Co. v. United States, 68 F.3d
1347 (Fed. Cir. 1995); Torrington Co. v. United States, 44 F.3d
1572 (Fed. Cir. 1995); Asociacion Colombiana de Exportadores de
Flores v. United States, 901 F.2d 1089 (Fed. Cir. 1990).   In sum,
indirect selling expenses are the expenses that do not result from,
or cannot be tied directly to specific sales, but that may
reasonably be attributed to such sales.   Therefore, FAFER's
indirect selling expenses could be analogized to general expenses
of Charleroi during the comparable time periods because: (1) FAFER
does all of its United States business through Charleroi (thus,
inclusive of the transaction at issue); (2) the expenses are of
comparable nature; and (3) there is no data on record verifying
that SG&A are admittedly not a part of the transaction.

Based on the foregoing, the Court affirms the Remand Results
in their entirety.   The "[C]ourt will sustain the determination if
it is reasonable and supported by the record as a whole, including
whatever fairly detracts from the substantiality of the evidence."
Negev Phosphates, Ltd. v. United States, 12 CIT 1074, 1077, 699 F.
Supp. 938, 942 (1988) (citations omitted, emphasis supplied).

Therefore, this Court concludes that Commerce has complied with the Court's remand, and it is hereby

**ORDERED** that the Remand Results filed by Commerce on October 1, 2001, are affirmed in their entirety; and it is further

**ORDERED** that since all other issues were previously decided, this case is dismissed.

```
                              _____
                              NICHOLAS TSOUCALAS
                              SENIOR JUDGE
```

Dated:    December 4, 2001
          New York, New York