Jerome KAMMES, Cheri Kammes, Earl Troxel, Judy Troxel, Harold Hocking, Stephen H. Hocking, John Hatfield, Diane Hatfield, George Franch, Norman L. Bruin, Leona Hayden Farm, Joel E. Gratz, Petitioners-Respondents,

v.

State of Wisconsin, MINING INVESTMENT & LOCAL IMPACT FUND BOARD, Appellant.

Court of Appeals

No. 82–626. Submitted on briefs March 3, 1983.—
Decided September 22, 1983.
(Also reported in 340 N.W.2d 206.)

For the appellant the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *William H. Wilker,* assistant attorney general.

For the petitioners-respondents the cause was submitted on the brief of *William F. Nelson* and *Thomas M. Pyper* and *Stafford, Rosenbaum, Rieser & Hansen* of Madison.

Before Gartzke, P.J., Dykman, J. and W.L. Jackman, Reserve Judge.

GARTZKE, P.J.  The Investment and Local Impact Fund Board appeals from a judgment entered in a ch. 227, Stats., review setting aside the board's decision awarding partial compensation to Lafayette County for the cost of constructing new water wells on private properties. The circuit court held that if funds were available, the board must award full compensation. We disagree.

The issues are:

1. Did the circuit court lack jurisdiction because the country failed to petition the board for a rehearing within twenty days of the board's decision?

2. Do the respondents have standing to petition for judicial review of the board's decision?

3. May the board award partial compensation for mining-related impacts under sec. 70.395(2)(g), Stats. 1979?

4. Was the board's grant of partial compensation arbitrary and capricious?

We conclude that the circuit court had jurisdiction, that certain respondents lack standing to bring this action and that the board may award partial compensation. We direct the court to dismiss the petition for ch. 227, Stats., review as to those respondents who lack standing. Because the board did not explain why it awarded seventy-five percent of the cost of construction rather than some other amount, we reverse the judgment as to the respondents who have standing and direct the court to remand the matter to the board for further proceedings.

The board is attached to the Department of Revenue. The Board administers the Investment and Local Impact Fund from which it makes distributions in accordance with sec. 70.395(2)(d) and (f)–(i), Stats. 1979. Secs. 15.435(1) and 15.431(1), Stats. The fund was created by sec. 70.395(2)(b), Stats. It is financed under sec. 70.395(1), Stats. 1979,[1] through the net proceeds occupation tax on persons engaged in mining metalliferous minerals, imposed by sec. 70.375, Stats. 1979. The board distributes funds in accordance with sec. 70.395(2)(d) and (f)–(i), Stats. 1979. We assume for purposes of this opinion that the board may award compensation to

[1] Section 70.395(1), Stats., as amended by secs. 27–28, ch. 86, Laws of 1981, applies to distributions from mines which begin operations on or after the effective date of the amendment, November 28, 1981. Section 70.395(1), Stats. 1979, remains in effect as to mines in operation before that date until January 1, 1991. Sec. 72, ch. 86, Laws of 1981.

the county to reimburse private persons for new wells on private property for mine-related reasons.[2]

The facts are undisputed. Lead mines in Lafayette county were closed in October 1979. The closings contaminated ten water wells on private lands. Lafayette County filed an emergency grant application with the board in 1980 pursuant to sec. 70.395(2)(g), Stats. 1979, for $82,500 to replace the contaminated wells.[3] The board granted the county seventy-five percent of the construction costs. None of the respondents was a party to that proceeding. No findings were made in that proceeding as to who owned the ten wells.

In its March 30, 1981 letter informing the county of its decision, the board said that the county could appeal to the board within thirty days from receipt of the letter. The statutory time limit to petition for rehearing is twenty days. Sec. 227.12(1), Stats. April 23, 1981 the county "appealed for reconsideration." None of the respondents joined that "appeal." May 8, 1981 the board denied the county's appeal.

The eleven respondents petitioned the circuit court for ch. 227, Stats., review of the board's decision. Respondents describe themselves as farm owners, farm tenants, a farm operator, and a farmer who buys water. Each respondent alleges he owns or takes water from a contaminated well in Lafayette county. No respondent alleges that he owns or leases any of the ten wells specified

---

[2] Whether a distribution of revenues for constructing wells on private property for private use is appropriate under sec. 70.395 (2)(g)10, Stats. 1979, is not raised on this appeal. Before deciding to distribute seventy-five percent of the construction costs for new wells on private lands, the board obtained the Attorney General's opinion that the expenditure would be appropriate under sec. 70.395(2)(g)10, Stats. 1979. 70 Op. Atty. Gen. 48, 49 (1981).

[3] The county's application also requested $10,200 for monitoring, analysis and evaluation of ground water in the area. The board granted that request. This portion of the grant is uncontested on appeal.

in the county's application or the board's findings.

The court's judgment, entered without an evidentiary hearing, nevertheless directed the board to award one hundred percent of the damages sustained by respondents, provided the Investment and Local Impact Fund has sufficient funds and no other reason exists to award less.

The board appeals the judgment. The scope of our review under ch. 227, Stats., is identical to that of the circuit court. *Sanitary Transfer & Landfill, Inc. v. DNR*, 85 Wis. 2d 1, 12, 270 N.W.2d 144, 149 (1978).

1. *Jurisdiction*

The respondents petitioned the circuit court for review within thirty days after the board denied a rehearing, as required by sec. 227.16(1)(a), Stats. The board contends the court lacked jurisdiction over the petition to review because the county's petition for rehearing was not filed with the board within twenty days of the board's decision, as required by sec. 227.12(1).[4]

The twenty-day requirement in sec. 227.12(1), Stats., applies to a contested case. *See Hixon v. Public Service Comm.*, 32 Wis. 2d 608, 622, 146 N.W.2d 577, 584 (1966), *reh'g denied* (1967) ("fair play" provisions of secs.

[4] In its reply brief the board offers to concede the jurisdiction and standing issues in order to reach a determination on the merits. Failure to comply with requirements for timely filing of an administrative appeal or for judicial review and standing (in a ch. 227 review) are issues which go to our subject matter jurisdiction. *Fox v. DHSS*, 112 Wis. 2d 514, 538, 334 N.W.2d 532, 543 (1983); and *Schiller v. Wisconsin ILHR Department*, 103 Wis. 2d 353, 355, 309 N.W.2d 5, 6 (Ct. App. 1981). Subject matter jurisdiction cannot be conferred by waiver. *Wis. Environmental Decade v. Public Service Comm.*, 84 Wis. 2d 504, 515, 267 N.W.2d 609, 616 (1978). We therefore address the jurisdiction and standing issues.

227.07 through 227.13 apply to contested case proceedings). A contested case has three elements:

First, there must be a hearing required by law . . . . Second, the legal rights, duties or privileges of one party must have been determined or adversely affected by the proceeding . . . . Third, the assertion of those rights, duties or privileges must have been denied or controverted by another party to the proceeding.

*Daly v. Natural Resources Board,* 60 Wis. 2d 208, 216-17, 208 N.W.2d 839, 844 (1973), *cert. denied,* 414 U.S. 1137 (1974).

The county's application for emergency relief was uncontroverted by another party. Accordingly, the proceeding before the board was not a contested case. The twenty-day limit on petitions for rehearing under sec. 227.12, Stats., therefore does not apply to the county's "appeal for reconsideration" by the board.

The county's appeal for reconsideration was timely under the board's own administrative rule. Wisconsin Admin. Code, sec. Tax 13.06(3) (c)4, 1982[5] provides in part, "[a]ny municipality wanting to appeal a funding decision by the board must submit a written appeal to the board within 30 days after notification." An agency is bound by its own procedural rules. *State ex rel. Meeks v. Gagnon,* 95 Wis. 2d 115, 119, 289 N.W.2d 357, 361 (Ct. App. 1980).

---

[5] Wisconsin Admin. Code, sec. Tax 13.06(3) (c)4, 1982, was amended in June 1982 to provide that an appeal had to be submitted to the board within twenty days after notification of a funding decision. Wis. Admin. Reg. No. 318, June 1982. Wisconsin Admin. Code, ch. Tax 13, 1982, was subsequently repealed and recreated effective December 1, 1982. Wis. Admin. Reg. No. 323, Nov. 1982. Wisconsin Admin. Code, sec. Tax 13.07(2) (e), provides a twenty-day period in which to make an appeal to the board.

We therefore reject the board's contention that the circuit court lacked jurisdiction over the petition to review.

### 2. *Standing*

Because respondents were not parties to the proceeding before it, the board argues that they lack standing for ch. 227, Stats., judicial review of its decision. We reject that reasoning, but we conclude that certain respondents have failed to show they possess an interest entitling them to standing.

Standing to obtain ch. 227, Stats, review is governed by secs. 227.15 and 227.16(1). Wisconsin's Environmental Decade, Inc. v. PSC, 69 Wis. 2d 1, 9, 230 N.W.2d 243, 247 (1975). Under those sections, "a person must be 'aggrieved' and 'directly affected' by the agency decision, and . . . the decision must 'directly affect the legal rights, duties or privileges' of the person seeking review." *Id.* (footnote omitted).

The Wisconsin rule of standing envisions a two-step analysis conceptually similar to the analysis required by the federal rule. The first step under the Wisconsin rule is to ascertain whether the decision of the agency directly causes injury to the interest of the petitioner. The second step is to determine whether the interest asserted is recognized by law.

69 Wis. 2d at 10, 230 N.W.2d at 248. The law of standing is not applied narrowly or restrictively. *Fox v. DHSS,* 112 Wis. 2d 514, 524, 334 N.W.2d 532, 537 (1983). If, however, a party to an action for judicial review lacks standing, the action must be dismissed as to that party. *Fox,* 112 Wis. 2d at 532, 334 N.W.2d at 541.

The county sought funds from the board to drill ten new wells. Whether a distribution by the county under sec. 70.395(2)(g), Stats. 1979, to a person having an

interest in a well is viewed as a right or a privilege, each respondent who owns one of the ten wells was directly injured by the board's decision to award less than the full cost of replacement. The record contains a modicum of evidence that respondents Harold Hocking and the Leona Hayden Farm Trust own land containing one of the ten wells. Those respondents have therefore mounted the first step for standing.

The record contains evidence that respondent Joel Gratz is a tenant on the Hayden farm. He submitted a bill to the board for the cost of hauling water to replace contaminated water. He has shown no right to compensation for the cost of a new well, and he does not contend on appeal that the board should compensate him for hauling water. Joel Gratz lacks standing. None of the remaining eight respondents has shown that he or she holds an interest in one of the ten wells. Those respondents therefore lack standing for judicial relief, and the petition for ch. 227, Stats., relief must be dismissed as to them.

We confine the balance of our discussion to the interests of the respondents with standing, Harold Hocking and the Hayden Farm Trust.

Hocking and the Hayden Trust assert a right or privilege to full compensation for a mining-related injury to their properties under sec. 70.395(2)(g), Stats. 1979, which provides in part:

The board may distribute the revenues received under sub. (1)(b) or proceeds thereof in accordance with par. (h) for the following purposes, as the board determines necessary:

. . . .

10. Expenses attributable to a permanent or temporary closing of a mine . . . .

Section 75.395 (2) (a), Stats. 1979,[6] declares, "It is the intent of the legislature that the investment and local impact fund be used exclusively to provide funds to municipalities for costs associated with social, educational, environmental and economic impacts of metalliferous mineral mining . . . ." The statute does not expressly prohibit providing funds for private mining-related impacts. Having already awarded funds to Lafayette county to cover seventy-five percent of the cost of constructing new wells on respondents' lands, the board concedes that respondents have an interest recognized by law.

Respondents Harold Hocking and the Hayden Trust meet both parts of the *Wisconsin's Environmental Decade* test. We conclude they have standing to petition the circuit court to review the board's decision.

### 3. *Board's Discretion*

Section 70.395 (2) (g), Stats. 1979, provides in part that the "board may distribute the revenues . . . or proceeds thereof . . . for the following purposes, as the board determines necessary . . . ." The board contends that its distribution decisions under sec. 70.395 (2) (g), Stats. 1979, are discretionary.

The circuit court held that if a claim for compensation under sec. 70.395 (2) (g), Stats. 1979, is proved, full compensation is mandated by law, subject only to limited availability of funds. The court relied on the statement in sec. 70.37 (2), Stats., that:

It is the declared intent of the legislature to establish a net proceeds occupation tax on persons engaged in the activity of mining metalliferous minerals in this state. The tax is established in order that the state may derive

---

[6] Section 70.395 (2) (a), Stats. 1979, was repealed by sec. 29m, ch. 86, Laws of 1981, effective November 28, 1981.

a benefit from the extraction of irreplaceable metalliferous minerals and in order to compensate the state and municipalities for costs, past, present and future, incurred or to be incurred as a result of the loss of valuable irreplaceable metallic mineral resources.

A statute's meaning is a question of law which an appellate court independently determines. *State v. Britzke,* 108 Wis. 2d 675, 680, 324 N.W.2d 289, 291 (Ct. App. 1982), *aff'd,* 110 Wis. 2d 728, 329 N.W.2d 207 (1983). If a statute is ambiguous, we attempt to locate its meaning by use of the rules of statutory construction. *Kollasch v. Adamany,* 104 Wis. 2d 552, 563, 313 N.W.2d 47, 52 (1981). A statute is ambiguous if reasonably well-informed individuals can understand it in more than one way. *Hurst v. State,* 72 Wis. 2d 188, 195, 240 N.W.2d 392, 397 (1976).

Section 70.395 (2) (g), Stats. 1979, requires two steps for a distribution decision: First, the distribution must be for a purpose enumerated under the statute. Second, the board must determine whether the distribution is "necessary." Because the statute does not specify whether the necessity rests in the board's discretion or is subject to another standard, it is ambiguous. We therefore undertake statutory construction.

Resort may be had to legislative history to determine the legislative intent behind an ambiguous statute. *Kollasch,* 104 Wis. 2d at 563, 313 N.W.2d at 52 (1981). That history convinces us that by authorizing the board to make distributions from the fund "as the board determines necessary," the legislature has vested the board with power to make discretionary distributions under sec. 70.395 (2) (g), Stats. 1979.

Chapter 31, Laws of 1977, created secs. 70.37 through 70.395, Stats. The new law was drawn by a Special Study Committee on Mineral Taxation, created by the

legislature. Sec. 4, ch. 283, Laws of 1973. A Legislative Council Research Report[7] describes the committee's work and discusses 1975 AB 1364, which proposed a net proceeds tax on metallic mineral mining, an Investment and Local Impact Fund, and a board to distribute the fund. *Id.* at 85–93. According to that report, the board would have "discretion" to distribute funds for various purposes, including "[o]ther expenses associated with the construction and operation of the mining facility." *Id.* at 92. A report filed by a Legislative Council Special Committee[8] which, as amended, became ch. 31, Laws of 1977, describes as "discretionary" that same category of payments, now enumerated under sec. 70.395(2)(g).[9]

The circuit court concluded that the statement of legislative intent in sec. 70.37(2), Stats., implies that the legislature contemplates full compensation for every mine-related impact, subject to limited availability of funds. The general intent to compensate for mining-related impacts is, however, no more than a legislative hope which is subordinate to the practicalities which underlie the board's determination of necessity, which determination is discretionary. *See Peterson v. Natural Resources Board,* 94 Wis. 2d 587, 596–97, 288 N.W.2d 845, 850 (1980) (specific statute controls over general statute in the event of an irreconcilable conflict). Because the board has the power under sec. 70.395(2)(g), Stats. 1979, to determine what is necessary to compen-

---

[7] Wisconsin Legislative Council Report of Special Study Committee on Mineral Taxation, *Research Report on Mining and Taxation of Metallic Minerals in Wisconsin* (September 15, 1976).

[8] Legislative Council Special Study Committee on Mineral Taxation and the Senate Special Select Committee on Mining Development, *Report to the 1977 Legislature* at 8–9 (April 5, 1977).

[9] The board by administrative rule, Wis. Admin. Code sec. Tax 13.07, refers to distributions under sec. 70.395(2)(g), Stats., as "discretionary payments."

sate for a mining-related impact, the board may award partial compensation. Consequently, we reject the circuit court's view that the board must award full compensation, whether or not funds permit such an award.

The board's discretionary power to make distributions "as the board deems necessary" under sec. 70.395(2)(g), Stats., is a legislative function. *Compare Gateway City Transfer Co. v. Public Service Comm.*, 253 Wis. 397, 404–05, 34 N.W.2d 238, 241–42 (1948) (power of Public Service Commission to grant license "as the public interest may require upon a finding of public convenience and necessity" is a legislative function). *See also Wesering v. James*, 71 Wis.2d 462, 473, 238 N.W.2d 695, 701 (1976) (whether incorporation of villages in "the public interest" is a matter of public policy rather than a judicial question). *In re City of Beloit*, 37 Wis. 2d 637, 644, 155 N.W.2d 633, 636 (1968) (what is necessary is an exercise of legislative power).

Appellate review of an agency's exercise of a legislative function is limited to whether the agency acted arbitrarily and capriciously. *J.F. Ahern Co. v. Building Commission*, 114 Wis. 2d 69, 90–91, 336 N.W.2d 679, 689 (Ct. App. 1983). A decision is arbitrary and capricious if it is "unreasonable or does not have a rational basis" or "is the result of an unconsidered, wilful and irrational choice of conduct and not the result of the 'winnowing and sifting' process." *Olson v. Rothwell*, 28 Wis. 2d 233, 239, 137 N.W.2d 86, 89 (1965).

The board based its award of seventy-five percent of construction costs on findings that the well contamination and proposed expenditures were mining-related, the anticipated costs were shown reasonably accurately, the wells were capital improvements for their owners, and the costs were high and funds limited. The board did not, however, state why payment of seventy-five percent of construction costs, rather than another percentage, was appropriate.

The reasoning process required for a rational course of conduct requires more than an articulation of the factors considered by the agency. When making an award, the agency must explain how those considered factors justify the award made. The gap between the facts and the conclusion must be filled. By articulating the factors upon which an award of a certain amount is made, without explaining why that particular amount is chosen, the board exercised its discretion in an arbitrary and capricious manner. *Madison Gas & Elec. Co. v. Public Service Comm.*, 109 Wis. 2d 127, 136–37, 325 N.W.2d 339, 344 (1982). A reviewing court must be able to determine why the decision maker, here the board, chose the amount it awarded, rather than some other amount. *In re Marriage of Lewis v. Lewis*, 113 Wis. 2d 172, 182, 336 N.W.2d 171, 176 (Ct. App. 1983); *Bahr v. Bahr*, 107 Wis. 2d 72, 82, 318 N.W.2d 391, 397 (1982).

Neither this court nor the circuit court may exercise discretion committed to the board. Sec. 227.20 (8), Stats. Accordingly, we must reverse that part of the judgment as to respondents Harold Hocking and Leona Hayden Farm Trust and direct the circuit court to remand the matter to the board for further proceedings consistent with this opinion. We will reverse the judgment as to all other respondents and direct that the action be dismissed as to them.

*By the Court.*—Judgment reversed as to Harold Hocking and Leona Hayden Farm Trust and cause remanded to the circuit court for remand to the Investment and Local Impact Fund Board for further proceedings consistent with this opinion as to those respondents. Judgment reversed and remanded to the circuit court to dismiss the petition for review as to all other respondents.