**Slip Op. 01-82**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

_____
                                                :
FABRIQUE DE FER DE CHARLEROI S.A.,              :
                                                :
        Plaintiff,                           :
                                                :
        v.                                   :
                                                :
THE UNITED STATES,                              :
                                                :  Court No.
        Defendant                            :  98-02-00359
                                                :
        and                                  :
                                                :
BETHLEHEM STEEL CORPORATION and                 :
U.S. STEEL GROUP A UNIT OF                       :
USX CORPORATION,                                :
                                                :
        Defendant-Intervenors.               :
_____:


      Plaintiff, Fabrique de Fer de Charleroi S.A. ("FAFER"), moves pursuant to USCIT R. 56.2 for judgment upon the agency record challenging various aspects of the United States Department of Commerce, International Trade Administration's ("Commerce") final determination, entitled <u>Final Results of Antidumping Duty Administrative Review of Certain Cut-to-Length Carbon Steel Plate From Belgium</u> ("<u>Final Results</u>"), 63 Fed. Reg. 2959 (Jan. 20, 1998). Specifically, FAFER disputes: (1) Commerce's use of FAFER's general commission as a proxy for FAFER's indirect selling expenses; and (2) Commerce's decision that FAFER's antidumping duties have been absorbed.

      **Held:** FAFER's USCIT R. 56.2 motion is granted in part and denied in part. This case is remanded to Commerce to: (1) examine the record for determination of what data should be used as a substitute for FAFER's indirect selling expenses; and (2) take further actions not inconsistent with this opinion.

[FAFER's motion is granted in part and denied in part. Case remanded].

Dated: July 3, 2001

Barnes, Richardson & Colburn (Gunter von Conrad, Michael J. Chessler and Alyssa Chumnanvech) for plaintiff.

Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Velta A. Melnbrencis, Assistant Director); of counsel: Bernd G. Janzen, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for the United States.

Dewey Ballantine LLP (Michael H. Stein, Bradford L. Ward and Frank J. Schweitzer) for defendant-intervenors.

## OPINION

**TSOUCALAS, Senior Judge:** Plaintiff, Fabrique de Fer de Charleroi S.A. ("FAFER"), moves pursuant to USCIT R. 56.2 for judgment upon the agency record challenging various aspects of the United States Department of Commerce, International Trade Administration's ("Commerce") final determination, entitled Final Results of Antidumping Duty Administrative Review of Certain Cut-to-Length Carbon Steel Plate From Belgium ("Final Results"), 63 Fed. Reg. 2959 (Jan. 20, 1998). Specifically, FAFER disputes: (1) Commerce's use of FAFER's general commission as a proxy for FAFER's indirect selling expenses; and (2) Commerce's decision that FAFER's antidumping duties have been absorbed.

## BACKGROUND

This case concerns the antidumping duty order on cut-to-length carbon steel plate imported to the United States from Belgium during the 1995-96 period of review ("POR"). See <u>Antidumping Duty Order and Amendment to Final Determination of Sales at Less Than Fair Value: Certain Cut-to-Length Carbon Steel Plate From Belgium</u> ("<u>Antidumping Duty Order</u>"), 58 Fed. Reg. 44,164 (Aug. 19, 1993). Commerce published the preliminary results of the subject review on September 15, 1997. See <u>Cut-to-Length Carbon Steel Plate From Belgium: Preliminary Results of Antidumping Duty Administrative Review</u>, 62 Fed. Reg. 48,213. Commerce published the <u>Final Results</u> on January 20, 1998. See 63 Fed. Reg. 2959. FAFER initiated the case at bar against Commerce on February 18, 1998, and on April 30, 1998, this Court granted consent motion to Bethlehem Steel Corporation and U.S. Steel Group A Unit of USX Corporation ("Domestic Producers") to enter as defendant-intervenors.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 19 U.S.C. § 1516a(a) (1994) and 28 U.S.C. § 1581(c) (1994).

## STANDARD OF REVIEW

The Court will uphold Commerce's final determination in an

antidumping administrative review unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ."  19 U.S.C. § 1516a(b)(1)(B)(i) (1994); see <u>NTN Bearing Corp. of Am. v. United States</u>, 24 CIT ___, ___, 104 F. Supp. 2d 110, 115-16 (2000) (detailing Court's standard of review in antidumping proceedings).

**A.   Commerce's Use of FAFER's General Commissions as a Proxy for FAFER's Indirect Selling Expenses**

   **1.   Background**

On August 19, 1993, Commerce published the <u>Antidumping Duty Order</u> covering merchandise subject to the review. See 58 Fed. Reg. 44,164.  On September 17, 1996, Commerce duly initiated the review at issue.  See <u>Initiation of Antidumping and Countervailing Duty Administrative Reviews</u>, 61 Fed. Reg. 48,882.  On September 19, 1996, Commerce issued to FAFER its standard questionnaire instructing FAFER, among other things, to report various expenses that FAFER incurred in its home market and the United States, inclusive of FAFER's indirect selling expenses related to the United States sales. See Def.'s Mem. Opp. Pl.'s Mot. J. Agency R. ("Def.'s Mem."), Ex. 1.  Later on, Commerce issued a supplemental questionnaire seeking additional information and clarifications. See Def.'s Mem., Ex. 3.

Both questionnaires provided very specific instructions with regard to the format in which Commerce expected FAFER to submit the information sought. See id., Ex. 1, 3. Responding to the questionnaires, FAFER did not identify FAFER's indirect selling expenses related to the United States sales in the way and with the specificity that Commerce requested. See Pl.'s Br. Sup. Mot. Summ. J. ("Pl.'s Br.") at 10. FAFER, however, notified Commerce that the submitted data: (a) was derived from FAFER's internal "Cost of Production Analysis System" ("COPAS"); (b) did not "distinguish between direct and indirect labor costs" due to the structural deficiencies of COPAS, Pl.'s Reply Br. Supp. Mot. Summ. J. ("Pl.'s Reply") at 5 and 6, n.7; and (c) provided the calculation of FAFER's general and administrative expenses ("G&A") that included employees wages and charges. See Pl.'s Br., App. 13.

Commerce was left unsatisfied with the information provided by FAFER. See Preliminary Results, 62 Fed. Reg. 48,213-14. During the review, Commerce determined that FAFER's United States sale was a constructed export price ("CEP") sale, that is, a sale of the subject merchandise to an unaffiliated purchaser through an intermediary, the price for which had to be adjusted under subsections (c) and (d) of 19 U.S.C. § 1677a (1994) to account for FAFER's various direct and indirect selling expenses. See Preliminary Results, 62 Fed. Reg. at 48,214; 19 U.S.C. § 1677a(b)-

(d) (1994).  Missing the information on FAFER's indirect selling expenses, Commerce resorted to the facts available in reaching the applicable determination.  See Def.'s Mem. 33-38.  Specifically, Commerce used FAFER's general policy commission rate as a proxy for FAFER's indirect selling expenses even though Commerce established that "FAFER paid no commission upon its sole [United States] sale to its subsidiary, Charleroi USA" ("Charleroi").  Id. at 37.

### 2. Exhaustion of Administrative Remedies

#### a.    Contentions of the Parties

As a preliminary matter, Commerce contends that the issues of whether Commerce properly: (a) "double-counted [indirect selling] expenses"; and (b) refused to entertain the shortcomings of FAFER's accounting system, should not be examined by this Court because FAFER failed to question these issues before Commerce and, consequently, forfeited its right to judicial review.  Def.'s Mem. at 28.

FAFER alleges that the issues were sufficiently presented for Commerce's consideration when FAFER: (1) stated the deficiencies of COPAS; and (2) pointed out that G&A calculation was made on the basis of employees wages and charges that have already been taken into account.  See Pl.'s Reply at 6.

###### b.   Analysis

The exhaustion doctrine requires a party to present its claims to the relevant administrative agency for the agency's consideration before raising these claims to the Court.  See Unemployment Compensation Comm'n of Alaska v. Aragon, 329 U.S. 143, 155 (1946) ("A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action").[1]

---

[1]   There is, however, no absolute requirement of exhaustion in the Court of International Trade in non-classification cases. See Alhambra Foundry Co. v. United States, 12 CIT 343, 346-47, 685 F. Supp. 1252, 1255-56 (1988). Section 2637(d) of Title 28 (1994) directs that "the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies." By its use of the phrase "where appropriate," Congress vested discretion in the Court to determine the circumstances under which it shall require the exhaustion of administrative remedies. See CEMEX, S.A. v. United States, 133 F.3d 897, 905 (Fed. Cir. 1998). Therefore, because "each exercise of judicial discretion in not requiring litigants to exhaust administrative remedies," the Court is authorized to determine proper exceptions to the doctrine of exhaustion. Alhambra Foundry, 12 CIT at 347, 685 F. Supp. at 1256 (citing Timken Co. v. United States, 10 CIT 86, 93, 630 F. Supp. 1327, 1334 (1986), rev'd in part on other grounds, Koyo Seiko Co. v. United States, 20 F.3d 1156 (Fed. Cir. 1994)).

In the past, the Court has exercised its discretion to obviate exhaustion where: (1) requiring "it would be futile," see Rhone Poulenc, S.A. v. United States, 7 CIT 133, 135, 583 F. Supp. 607, 610 (1984) ("it appears that it would have been futile for plaintiffs to argue that the agency should not apply its own regulation"), or would be "inequitable and an insistence of a useless formality" as in the case where "there is no relief which

The purpose behind the doctrine of exhaustion is to prevent courts from premature involvement in administrative proceedings, and to protect agencies "from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  Abbott Lab. v. Gardner, 387 U.S. 136, 148-49 (1967); see also Public Citizen Health Research Group v. Commissioner, FDA, 740 F.2d 21, 29 (D.C. Cir. 1984) (pointing out that the exhaustion doctrine serves "four primary purposes: [(1)] it ensures that persons do not flout established administrative processes"; (2) "it protects the autonomy of agency decisionmaking"; (3) it aids judicial review by permitting factual development of issues relevant to the dispute; and (4) "it serves judicial economy by avoiding repetitious administrative and judicial factfinding" and by resolving sole claims without judicial intervention.)

---

plaintiff may be granted at the administrative level," United States Cane Sugar Refiners' Ass'n v. Block, 3 CIT 196, 201, 544 F. Supp. 883, 887 (1982); (2) a subsequent court decision has interpreted existing law after the administrative determination at issue was published, and the new decision might have materially affected the agency's actions, see Timken, 10 CIT at 93, 630 F. Supp. at 1334; (3) the question is one of law and does not require further factual development and, therefore, the court does not invade the province of the agency by considering the question, see id.; R.R. Yardmasters of Am. v. Harris, 721 F.2d 1332, 1337-39 (D.C. Cir. 1983); and (4) the plaintiff had no reason to suspect that the agency would refuse to adhere to clearly applicable precedent.  See Philipp Bros., Inc. v. United States, 10 CIT 76, 79-80, 630 F. Supp. 1317, 1321 (1986).

     While a plaintiff cannot circumvent the requirements of the doctrine of exhaustion by merely mentioning a broad issue without raising a particular argument, plaintiff's brief statement of the argument is sufficient if it alerts the agency to the argument with reasonable clarity and avails the agency with an opportunity to address it.  See generally, Hormel v. Helvering, 312 U.S. 552 (1941); see also Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1191 (Fed. Cir. 1990).  The sole fact of agency's failure to address plaintiff's challenge does not invoke the exhaustion doctrine and shall not result in forfeiture of plaintiff's judicial remedies.  See generally, B-West Imports, Inc. v. United States, 19 CIT 303, 880 F. Supp. 853 (1995).  An administrative decision not to address the issue cannot be dispositive of the question whether or not the issue was properly brought to the agency's attention. See, e.g., Allnutt v. United States DOJ, 2000 U.S. Dist. LEXIS 4060 (D. Md. 2000).

     In the case at bar, Commerce advised FAFER that common examples of indirect selling expenses are "inventory carrying costs, salesmen's salaries, . . . product liability insurance[,] . . . technical services [and] warranty repairs."  See Def.'s Mem. at 27 (emphasis supplied).  FAFER stated that its G&A costs included "employees wages [that have already been taken into account,] . . . [i]nsurance costs [and] . . . research costs."  Pl.'s Br. App. 13

(emphasis supplied).  FAFER also notified Commerce that its accounting system did not "distinguish between direct and indirect" expenses.  Pl.'s Reply at 6, n.7, accord Def.'s Mem. Ex. 5.  While Commerce chose to read these two statements as asserting neither that FAFER's "G&A costs . . . included [FAFER's] indirect selling expenses," nor that FAFER's "financial accounting system precluded the identification of indirect selling expenses," Def.'s Mem. at 30, FAFER's responses sufficiently provided Commerce with an opportunity to address the issues.  The Court, therefore, concludes that FAFER properly exhausted its administrative remedies and has the right to raise these issues to the Court.

### 3.    Commerce's Resort to Facts Available

### a.    Contentions of the Parties

Commerce contends that "FAFER's failure to[:] (1) report [FAFER's United States] indirect selling expenses[;] and (2) explain why Commerce should [assume] . . . that there simply were no such expenses, . . . warranted an adjustment based upon the facts available."  Def.'s Mem. at 36 (citing to Final Results, 63 Fed. Reg. at 2963).  Domestic Producers similarly assert that Commerce's resort to facts available was justified in view of the shortcomings of the information submitted by FAFER.  See Domestic Producers' Resp. Pl.'s R. 56.2 Mot. J. Agency R. ("Domestic

Producers' Resp.") at 10-11.

FAFER argues that Commerce was not entitled to resort to the facts available because: (1) FAFER included its home market indirect selling expenses in its cost responses; and (2) Commerce verified all the data submitted by FAFER.  See Pl.'s Br. at 9-19.

### b.   Analysis

When Commerce cannot obtain the information in a timely manner or receives incomplete information, the appropriate statute allows and, in certain circumstances, requires Commerce to use facts available.  See 19 U.S.C. § 1677e(a), (b) (1994).  Specifically, section 1677e(a) of Title 19 provides that "if . . . necessary information is not available on the record, or . . . any . . . person . . . fails to provide such information by the deadlines for submission of the information or in the form and manner requested[,] . . .[Commerce] shall . . . use the facts otherwise available in reaching the applicable determination . . . ."  19 U.S.C. § 1677e(a) (emphasis supplied).  Furthermore, if  "an interested party . . . fail[s] to cooperate by not acting to the best of its ability to comply with a request for information from [Commerce, Commerce], in reaching the applicable determination . . . ., may use an inference that is adverse to the interests of that party [and is] . . . derived from . . . any . . . information

placed on the record."    19 U.S.C. § 1677e(b).

The legislative goal behind Commerce's right to use facts available is to "induce respondents to provide Commerce with requested information in a timely, complete, and accurate manner . . . ." National Steel Corp. v. United States, 18 CIT 1126, 1129, 870 F. Supp. 1130, 1134 (1994) (citation omitted).  Consequently, Commerce enjoys very broad, although not unlimited, discretion with regard to the propriety of its use of facts available.  See generally, Olympic Adhesives, Inc. v. United States, 899 F.2d 1565 (Fed. Cir. 1990) (acknowledging Commerce's broad discretion with regard to the use of facts available but pointing out that Commerce's resort to facts available is an abuse of discretion where the information Commerce requests does not and could not exist).

If a party, however,

promptly . . . notifies [Commerce] that such party is unable to submit the information requested in the requested form and manner [and provides Commerce] with a full explanation and suggested alternative forms in which such party is able to submit the information, [Commerce] shall consider the ability of the . . . party to submit the information in the requested form and manner and may modify [Commerce's] requirements to the extent necessary to avoid imposing an unreasonable burden on that party.

19 U.S.C. § 1677m(c)(1) (1994) (emphasis supplied).

Furthermore, Commerce

> shall not decline to <u>consider</u> information that is submitted . . . and is necessary to the determination but does not meet all the applicable requirements . . . if-- . . . the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination, . . . and . . . <u>the information can be used without undue difficulties</u>.

19 U.S.C. § 1677m(e)(3) and (5) (1994) (emphasis supplied).

During the review at issue, Commerce requested FAFER to submit a per-unit G&A rate, to which selling expenses had to be added to arrive at a selling, general and administrative ("SG&A") rate. <u>See</u> Def.'s Mem. at 31. FAFER, however, failed to report indirect selling expenses in the manner required by Commerce. <u>See</u> Pl.'s Br. at 9-14. While Commerce should have considered the shortcomings of FAFER's accounting system, Commerce had discretion in determining whether: (1) Commerce was satisfied with "suggested alternative forms in which [FAFER was] able to submit the information"; (2) Commerce was "imposing an unreasonable burden" on FAFER by requesting the information to be submitted in particular form, 19 U.S.C. § 1677m(c)(1); (3) the "information [supplied by FAFER was] not so incomplete that it [could not] serve as a reliable basis for reaching the applicable determination"; and (4) "the information [could have been used by Commerce] without undue difficulties." 19 U.S.C. § 1677m(e). Commerce, therefore, had the right to determine that FAFER's mere statements that: (a) FAFER's G&A expenses did include employees wages and charges that "have already

been taken into account," Pl.'s Br. App. 13; and (b) FAFER's accounting system does not "distinguish between direct and indirect labor costs" due to its structural deficiencies, Pl.'s Reply at 6, n.7, were insufficient under the requirements posed by 19 U.S.C. §§ 1677m(c)(1) and (e).  Consequently, Commerce was justified in resorting to facts available[2] under the mandate of 19 U.S.C. §§ 1677e(a) and (b).[3]

---

[2]      Commerce asserted that in reaching its determination, Commerce had the right to rely and actually relied on 19 U.S.C. § 1677e(b), the subsection allowing the use of adverse facts available, in addition to relying on 19 U.S.C. § 1677e(a).  See Def.'s Mem. at 34.  Commerce fails to make a distinction between the use of facts available provided for in 19 U.S.C. § 1677e(a) and the use of adverse facts available reserved for the determinations concerning those parties that "fail to cooperate by not acting to the best of [their] abilit[ies]."  19 U.S.C. § 1677e(b).  While the shortcomings contained in FAFER's data empowered Commerce to resort to 19 U.S.C. § 1677e(a), FAFER was sufficiently cooperative, thus precluding Commerce's reliance on 19 U.S.C. § 1677e(b). Compare Transcom, Inc. v. United States, 24 CIT ___, ___, 121 F. Supp. 2d 690, 704-05 (2000).

[3]      FAFER argues that because: (1) FAFER explained FAFER's cost of production analysis system to Commerce in great detail; and (2) Commerce verified the reported costs, such verification constitutes an implied admission by Commerce that Commerce found FAFER's statements with regard to indirect selling expenses satisfactory.  See Pl.'s Br. at 9-20.  Commerce's verification, however, is nothing more that the act of reconciling FAFER's reported costs to the information contained in financial statements of consolidated companies.  See Def.'s Mem. at 32 and Ex. 9.  The process of verification does not imply Commerce's endorsement of each expense item.  See id.  As Commerce correctly points out, "FAFER's lengthy analysis of the cost verification cannot alter the fact that FAFER did not report its indirect selling expenses as specifically requested by Commerce."  Id. at 33 (emphasis supplied).

4.   Commerce's Use of the Imputed Commission
     as a Proxy for FAFER's Indirect Selling Expenses

a.   Contentions of the Parties

Commerce contends that because "in calculating [FAFER's] CEP,
Commerce must deduct from the price to an unaffiliated purchaser
various expenses, including indirect selling expenses," Commerce
acted reasonably by using the "commission amount derived from
FAFER's . . . response" as a proxy for the missing data on FAFER's
indirect selling expenses.  Def.'s Mem. at 34-35 (citing to Final
Results, 63 Fed. Reg. at 2963).  Domestic Producers: (1) support
Commerce's contention, see Domestic Producers' Resp. at 12-38; and
(2) point out that Commerce's action was reasonable because FAFER's
indirect selling expenses would be an amount near the amount to
which Commerce arrived on the basis of facts available.  See id. at
26.

FAFER argues that Commerce was not entitled to rely on FAFER's
commission rate because the "rate [is] known not to be applicable"
in view of the particular facts of the case.  Pl.'s Reply at 18-20.

b.   Analysis

Making a determination based on facts available, Commerce
should: (1) strive to arrive to "the most reasonable estimate," see
Def.'s Mem. at 34; and (2) rely on the data that has a "rational

relationship . . . [to] the matter . . . ." National Steel, 18 CIT at 1132, 870 F. Supp. at 1136 (quoting Manifattura Emmepi S.p.A. v. United States, 16 CIT 619, 624, 799 F. Supp. 110, 115 (1992)).

The sale at issue was made by FAFER with the assistance of Charleroi, and it was the only sale of subject merchandise that FAFER made during the POR. While there is no evidence on the record showing that Charleroi received any form of compensation under FAFER's general policy commission rate, there is conflicting data on record suggesting that FAFER might have incurred specific indirect selling expenses in the course of the transaction. See Pl.'s Reply at 19-22; Def.'s Mem. at 35-36 and Ex. 6, 12.

Commerce has the practice of using qualified data as a proxy for the data missing from the record. See, e.g., Final Results of Antidumping Administrative Review of Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From the People's Republic of China, 62 Fed. Reg. 61,276, 61,277 (Nov. 17, 1997); Preliminary Results of New Shipper Antidumping Duty Administrative Review of Certain Stainless Steel Wire Rod From India, 62 Fed. Reg. 6171 (Feb. 11, 1977). Commerce, however, may neither use the substitute data out of context, see Manifattura Emmepi, 16 CIT 619, 799 F. Supp. 110, nor "resort to [the facts available] as an easy method

to dispose of a case." NTN Bearing Corp. of Am. v. United States, 17 CIT 713, 720, 826 F. Supp. 1435, 1441 (1993). While Commerce's resort to the facts available was justified, the Court shares FAFER's bewilderment about Commerce's choice to use the only piece of data admittedly unrelated to the transaction at issue as a proxy for FAFER's indirect selling expenses. See Pl.'s Reply at 19-22; Def.'s Mem. at 35-36 and Ex. 6, 12. There could be no rational relationship between a matter and a data that expressly does not apply to that matter under the particular facts of the case. Compare National Steel, 18 CIT at 1132, 870 F. Supp. at 1136; Consolidated Bearings Co. v. United States, 2001 Ct. Intl. Trade LEXIS 74 at *29-30, Slip Op. 2001-66 at 24 (2001) (quoting Madison Metro. Sch. Dist. v. School Dist. Boundary Appeal Bd., 1998 Wisc. App. LEXIS 1200 (Wis. Ct. App. 1998), quoting in turn Kammes v. Mining Inv. & Local Impact Fund Bd., 340 N.W. 2d 206, 213 (Wis. Ct. App. 1983), and stating that "a rational course of conduct requires [that] . . . [t]he gap between the facts and the conclusion must be filled"). Considering that there is no dispute about the inapplicability of FAFER's actual general commission to the sale at issue, Commerce's use of such commission as a proxy for FAFER's indirect selling expenses is unreasonable.[4]

---

[4] The mere possibility that FAFER's indirect selling expenses could be an amount near the amount to which Commerce arrived on the basis of facts available, see Domestic Producers' Resp. at 26,

**B.    Commerce's Determination that FAFER's
       Antidumping Duties Have Been Absorbed**

   **1.    Background**

   During the review, Commerce provided FAFER with an opportunity to submit relevant evidence and considered all submitted evidence in reaching its final determination.  See Final Results, 63 Fed. Reg. at 2964.

   In the Preliminary Results, Commerce determined that antidumping duties have been absorbed by FAFER on one hundred percent of its United States sales because Commerce: (1) had preliminarily determined that there was a dumping margin on one hundred percent of FAFER's sales; and (2) could not conclude from the record that an unaffiliated purchaser in the United States would pay the ultimately assessed duty.  See 62 Fed. Reg. at 48,217.  Commerce, however, allowed FAFER to submit (within 15 days after publication of the Preliminary Results) evidence that unaffiliated purchasers in the United States would pay the ultimately assessed duty charged to affiliated importers.  See id. In response, FAFER submitted a very brief letter by an unaffiliated purchaser stating that the purchaser "irrevocably" committed itself

_____

cannot serve as a valid argument in view of Commerce's admitted obligation to arrive at "the most reasonable estimate," see Def.'s Mem. at 34 (emphasis supplied), that is, the estimate most rational under the circumstances rather than the most similar.

to pay any antidumping duty on merchandise acquired from FAFER "if such duty is assessed upon final determination by . . . Commerce." Def.'s Mem., Ex. 11.  Unsatisfied with the deficiencies of this promise,[5] Commerce made further inquiries of whether there has been a modification to the existing sales contract other than this very brief letter.  See id., Ex. 6, 14.  FAFER responded that "[t]here has been no modification to the existing contract" and did not explain why its customer would agree unilaterally to pay an unspecified amount at an unspecified time without apparent consideration.  Id., Ex. 14.  Consequently, Commerce concluded that: (1) the evidence on the record did not demonstrate the existence of an enforceable agreement to pay the full amount of the assessed duties; and (2) "antidumping duties have been absorbed by FAFER on one hundred percent of its [United States] sales." Final Results, 63 Fed. Reg. at 2964.

2.   **Commerce's Right to Conduct an Ad Hoc Determination Without Promulgating a Definite Criteria**

a.   **Contentions of the Parties**

FAFER contends that Commerce's finding that FAFER absorbed antidumping duties through its United States sales affiliate,

---

[5]   The contractual agreement failed to state, among other things, the consideration and the time of performance.  See Final Results, 63 Fed. Reg. at 2964.

Charleroi, was "contrary to the facts on the record" and is premised on "faulty logic" because Commerce provided "no substantive criteria . . . for trade participants or even counsel to follow in establishing non-absorption."  Pl.'s Br. at 28 (emphasis in original).

Commerce maintains that its determination that FAFER absorbed antidumping duties was reasonable, and "[t]he fact that FAFER's evidence was found to be insufficient . . . does not mean that there were no substantive criteria to follow." Def.'s Mem. at 40. Domestic Producers support Commerce's contentions.  See Domestic Producers' Resp. at 39-44.

### b.   Analysis

The duty absorption inquiry is a relatively new feature of Commerce's antidumping investigation.  See Notice of Proposed Rulemaking and Request for Public Comments on Antidumping Duties; Countervailing Duties, 61 Fed. Reg. 7308, 7313 (Feb. 27, 1996) (giving notice  that such inquiries are to be conducted by Commerce).  Commerce clarified that such inquiries have little precedent and, therefore, Commerce indicated that it would proceed on an ad hoc basis until sufficient experience is collected.  See Final Rule on Antidumping Duties; Countervailing Duties, 62 Fed. Reg. 27,296, 27,318 (May 19, 1997).  Commerce specifically stated

that Commerce "ha[s] not adopted . . . substantive duty absorption criteria [because Commerce] will need experience with absorption inquiries before it is able to promulgate such criteria."  Id.

Commerce's right to conduct the absorption inquiry is provided for in 19 U.S.C. § 1675(a)(4) (1994).  The statute clarifies that

> [d]uring any review [duly initiated, Commerce], if requested, shall determine whether antidumping duties have been absorbed by a foreign producer or exporter subject to the order if the subject merchandise is sold in the United States through an importer who is affiliated with such foreign producer or exporter.

19 U.S.C. § 1675(a)(4).

There is nothing in the language of section 1675(a)(4) requiring Commerce to specifically articulate the standard of what constitutes duty absorption prior to conducting a duty absorption inquiry.  Conversely, the statutory language that Commerce "shall determine whether antidumping duties have been absorbed" demonstrates clear congressional mandate allowing Commerce to engage in the rulemaking processes traditionally used by an agency, including reaching a determination after examining the particular circumstances of the case without formally promulgating an all-inclusive standard.  In aspiring to create a detailed standard, an agency is expected to accumulate technical expertise and draw from the monitoring of the regulated industry.  See, e.g., Natural

Resources Defense Council, Inc. v. U.S. EPA, 859 F.2d 156, 210

(D.C. Cir. 1988).

> [An] administrative implementation of a particular
> statutory provision [is valid and] qualifies for Chevron
> [U.S.A. Inc. v. National Resources Defense Council, Inc.,
> ("Chevron"), 467 U.S. 837, 842-43 (1984)] deference when
> it appears that Congress delegated authority to the
> agency generally to make rules carrying the force of law,
> and that the agency interpretation claiming deference was
> promulgated in the exercise of that authority.
> Delegation of such authority may be shown in a variety of
> ways, as by an agency's power to engage in adjudication
> or notice-and-comment rulemaking, or by some other
> indication of a comparable congressional intent.

United States v. Mead Corp., 121 S. Ct. 2164, 2171 (2001).


Commerce is correct in asserting that demarcated guidelines

are not an indispensable part of the criteria that an agency uses

in reaching a determination.  Accord Def.'s Mem. at 40.  Commerce

was entitled to make a determination on an ad hoc basis by applying

Commerce's expertise to the particular facts of the case at bar,

see Natural Resources Defense Council, Inc., 859 F.2d at 210, and

postpone the promulgation of a substantive duty absorption criteria

until sufficient information is gathered.


   2.   **Reasonableness of Commerce's Determination**

        1.   **Contentions of the Parties**

FAFER alleges that Commerce's determination that FAFER's

antidumping duties have been absorbed on one hundred percent of

FAFER's United States sales is an "unacceptable exercise of arbitrary" judgment.  Pl.'s Br. at 29.  FAFER maintains that the letter by an unaffiliated purchaser supplied by FAFER to Commerce contained an "unqualified commitment to pay the antidumping duties" and constituted sufficient evidence that FAFER's antidumping duties have not been absorbed.  See id.

Commerce asserts that FAFER's antidumping duties have been absorbed because Commerce determined that "there was no [valid] contract for the unaffiliated customer to pay the ultimately assessed duties."  Def.'s Mem. at 42.  Commerce contends that it reasonably refused to accept the commitment letter as sufficient evidence to the contrary because the letter: (1) was an unenforceable promise "to pay an uncertain amount, at an uncertain time, under uncertain circumstances;" and (2) failed to provide for a proper contractual consideration.  See id.

###     2.    Analysis

In the Preliminary Results, 62 Fed. Reg. at 48,217-18, Commerce stated that it would consider evidence that unaffiliated purchasers in the United States would pay the ultimately assessed duty charged to affiliated importers.  Upon FAFER's submission of the record information, Commerce examined the terms of sale, first,

between FAFER and Charleroi, and then between Charleroi and its unaffiliated United States customer, and arrived at the conclusion that the only relevant piece of evidence provided by FAFER, that is, the agreement letter, was unenforceable due to the lack of either consideration or certainty of amount, time, or conditions. See Def.'s Mem. at 42.

The Court holds that Commerce's conclusion was reasonable. It is axiomatic that while the uncertainty of amount, time and conditions could be sometimes cured by particular circumstances of the case, the lack of consideration makes a contract unenforceable. See, e.g., Johnson v. Johnson, 614 N.E.2d 348 (Ill. App. Ct. 1993); Appolonio v. Baxter, 217 F.2d 267 (6th Cir. 1954); Robertson v. Miller, 286 F. 503 (2nd Cir. 1922). FAFER's failure to cure this defect in the agreement letter left Commerce no choice but to arrive at the decision Commerce made. The mere fact that FAFER's evidence was deemed by Commerce insufficient to establish that an unrelated purchaser would, in fact, pay the duties ultimately assessed, means neither that Commerce's conclusion was faulty, nor does it mean that Commerce's determination that FAFER's antidumping duties have been absorbed on one hundred percent of FAFER's United States sales was unreasonable. See Chevron, 467 U.S. 837. In view of the foregoing, Commerce properly determined that FAFER's antidumping duties have been absorbed on one hundred percent of

FAFER's United States sales.

## CONCLUSION

This case is remanded to Commerce to: (1) examine the record to determine what data should be used as a substitute for FAFER's indirect selling expenses; and (2) take further actions not inconsistent with this opinion.

_____
NICHOLAS TSOUCALAS
SENIOR JUDGE


Dated:     July 3, 2001
           New York, New York