SLIP OP. 03-150

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: RICHARD K. EATON, JUDGE

_____
                                        :
YANTAI ORIENTAL JUICE CO., ET AL.,      :
                                        :
               PLAINTIFFS,              :
                                        :
     V.                                 :          COURT NO. 00-00309
                                        :
UNITED STATES,                          :
                                        :
               DEFENDANT,               :
                                        :
     AND                                :
                                        :
COLOMA FROZEN FOODS, INC., ET AL.,      :
                                        :
               DEF.-INTERVENORS.        :
_____:


[Commerce's second remand determination sustained.]


                                            Decided: November 20, 2003

        *Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP* (*Bruce M. Mitchell*, *Jeffrey S. Grimson* and *Mark E. Pardo*), for Plaintiffs.

        *Peter D. Keisler*, Assistant Attorney General, Civil Division, United States Department of Justice; *David M. Cohen*, Director, Civil Division, Commercial Litigation Branch, United States Department of Justice; *Jeanne E. Davidson*, Deputy Director (*Ada E. Bosque*); *Scott D. McBride*, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for Defendant.

        *The Law Firm of C. Michael Hathaway* (*C. Michael Hathaway*), for Defendant-Intervenors.

MEMORANDUM OPINION

*EATON*, *Judge*:  On March 21, 2003, the court, for the second time, remanded certain aspects of

the United States Department of Commerce's ("Commerce" or the "Department") determination

in Certain Non-Frozen Apple Juice Concentrate from the P.R.C., 65 Fed. Reg. 19,873 (Dep't

Commerce Apr.13, 2000) (final determination) ("Final Determination"), as amended in Certain

Non-Frozen Apple Juice Concentrate From the P.R.C., 65 Fed. Reg. 35,606 (Dep't Commerce

June 5, 2000) (am. final determination) ("Amended Final Determination"), covering the period of

investigation ("POI") of October 1, 1998, through March 31, 1999.  *See Yantai Oriental Juice*

*Co. v. United States*, 27 CIT__, slip op. 03-33 (Mar. 21, 2003) ("*Yantai II*").  The second remand

order directed Commerce to revisit the issue of the proper calculation of the antidumping duty

margin for Xianyang Fuan Juice Co., Ltd., Xian Asia Qin Fruit Co., Ltd., Changsha Industrial

Products & Minerals Import & Export Corp., and Shandong Foodstuffs Import & Export Corp.,[1]

and explain in clear and specific terms why its selected methodology "is based on the best

available information and establishes antidumping margins as accurately as possible."  *Yantai II*,

27 CIT at __, slip op. 03-33 at 18 (internal quotation omitted).  On May 5, 2003, Commerce

released the results of its second remand determination.  *See* Second Redetermination Pursuant to

Court Remand Order in *Yantai Oriental Juice Co. v. United States* (Mar. 21, 2003) (Dep't

Commerce May 5, 2003), Second Remand R. Pub. Doc. 8  ("Second Remand Determination").

---

[1]     These companies fully responded to Commerce's antidumping questionnaire but were not selected for investigation.  They shall be referred to collectively as the "Cooperative Respondents."  Yantai Oriental Juice Co., Qingdao Nannan Foods Co., Sanmenxia Lakeside Fruit Juice Co., Ltd., Shaanxi Haisheng Fresh Fruit Juice Co., and Shandong Zhonglu Juice Group Co. were fully investigated and shall be referred to collectively as the "Fully-Investigated Respondents."  The Cooperative Respondents and the Fully-Investigated Respondents are plaintiffs in this action ("Plaintiffs").

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2000) and 19 U.S.C. §

1516(a)(2)(A)(i)(I).   For the reasons set forth below, the court sustains Commerce's Second

Remand Determination.


BACKGROUND

In the original investigation, the antidumping duty margin for the Cooperative

Respondents was calculated to be 14.88%.  *See* Am. Final Determination, 65 Fed. Reg. at

35,607.  This antidumping duty margin was based on the weighted-average of antidumping duty

margins for the Fully-Investigated Respondents.  *See* Final Determination, 65 Fed. Reg. at

19,874.  After the first remand, however, Commerce determined that, because the Fully-

Investigated Respondents would receive antidumping duty margins of zero percent, a new

methodology was needed to calculate the antidumping duty margin for the Cooperative

Respondents.  *See Yantai II*, 27 CIT__, slip op. 03-33 at 12 (citing Redetermination Pursuant to

Court Remand Order in *Yantai Oriental Juice Co. v. United States* (Dep't Commerce Nov. 15,

2002), First Remand R. Pub. Doc. 53 ("First Remand Determination") at 14).  Specifically,

Commerce determined that it would calculate the Cooperative Respondents' margin following

the "all-others" methodology of 19 U.S.C. § 1673d(c)(5).  *See id.*  However, because all of the

margins in the investigation were either (1) zero percent (i.e., the Fully-Investigated

Respondents' margins) or (2) based on facts available (i.e., the PRC-wide margin), Commerce

did not follow the methodology of 19 U.S.C. § 1673d(c)(5)(A) but, instead, looked to 19 U.S.C.

§ 1673d(c)(5)(B).  *See id.* at 13 (citing First Remand Determination at 14).  Using this

methodology, the Cooperative Respondents' calculated antidumping duty margin increased from

14.88% to 28.33%.  *Id*. at 16.

After reviewing the remand results, the court determined that it could not sustain

Commerce's new methodology as proper.  The court reasoned:

> First, the record shows that the Cooperative Respondents fully and
> completely complied with all of Commerce's requests for
> information.  Indeed, the only apparent difference between the
> Fully-Investigated Respondents and the Cooperative Respondents
> is that Commerce did not select them for full investigations.
> Second, while it is not inconceivable that individual margins for
> each Cooperative Respondent could have increased had they been
> fully investigated, this outcome seems unlikely given that all of the
> Fully-Investigated Respondents' antidumping duty margins were
> reduced to zero percent—including that respondent originally
> assigned an antidumping duty margin of 27.57 percent.  Given
> these facts it appears that Commerce strained to reach its result.
> This is particularly puzzling given that in reaching its result
> Commerce abandoned the methodology used in the *Final
> Determination* (i.e., weight-averaging the estimated dumping
> margins of the Fully-Investigated Respondents) even though that
> method is specifically provided for in the statutory subsection it
> purported to follow.  More importantly, in doing so, Commerce
> failed to justify the use of its new methodology other than by
> reference to the SAA.  The SAA, however, takes into account the
> possibility that, under certain facts, the "expected" method should
> not be used.

*Yantai II*, 27 CIT at __, slip op. 03-33 at 16–17 (citations omitted).  As a result, the court

remanded this matter a second time.  In doing so, the court directed Commerce to

> revisit the issue of the proper calculation of the Cooperative
> Respondents' antidumping duty margin and . . . either: (1) use the
> methodology set forth in 19 U.S.C. § 1673d(c)(5)(B); or (2) set out
> another methodology.  In either event, Commerce shall explain in
> clear and specific terms why its selected methodology "is based on
> the best available information and establishes antidumping margins
> as accurately as possible."

*Id.*, 27 CIT at __, slip op. 03-33 at 18 (citing *Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States*, 268 F.3d 1376, 1382 (Fed. Cir. 2001)).

In its Second Remand Determination, Commerce calculated the antidumping duty margin for the Cooperative Respondents to be 3.83%. *See* Second Remand Determination at 9.

STANDARD OF REVIEW

The court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(1)(B)(i); *Huaiyin Foreign Trade Corp. (30) v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i) (2000)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Huaiyin*, 322 F.3d at 1374 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The existence of substantial evidence is determined "by considering the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" *Id.* (citing *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)). Commerce has considerable discretion in the evaluation of factors of production. *Nation Ford Chem. Co. v. United States*, 21 CIT 1371, 1374–75, 985 F. Supp. 133, 136–37 (1997), *aff'd* 166 F.3d 1373 (Fed. Cir. 1999). "When examining Commerce's factual determinations, '[i]t is not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record.'" *Air Prods. & Chems., Inc. v. United States*, 22 CIT 433, 442, 14 F.

Supp. 2d 737, 746 (1998) (quoting *Timken Co. v. United States*, 12 CIT 955, 962, 699 F. Supp.

300, 306 (1988), *aff'd* 894 F.2d 385 (Fed. Cir. 1990)). "In reviewing the Department's

construction of a statute it administers, [the court defers] to the agency's reasonable

interpretation of the antidumping statutes if not contrary to an unambiguous legislative intent as

expressed in the words of the statute." *Huaiyin,* 322 F.3d at 1374–75 (citing *Timex V.I., Inc. v.*

*United States*, 157 F.3d 879, 881–82 (Fed. Cir. 1998)). Furthermore, "[a]s long as the agency's

methodology and procedures are reasonable means of effectuating the statutory purpose, and

there is substantial evidence in the record supporting the agency's conclusions, the court will not

impose its own views as to the sufficiency of the agency's investigation or question the agency's

methodology." *Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 404–05, 636 F.

Supp. 961, 966 (1986), *aff'd* 810 F.2d 1137 (Fed. Cir. 1987) (citing *Chevron U.S.A. Inc. v.*

*Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984); *Abbott v. Donovan*, 6 CIT 92, 97,

570 F. Supp. 41, 46–47 (1983)).


DISCUSSION

In the Second Remand Determination, Commerce stated that

> [t]he Department agrees with the Court that the [Cooperative
> Respondents] were responsive and fully cooperated with the
> Department in the investigation. The [Cooperative Respondents]
> had originally requested to be fully examined during the
> investigation. . . .
>
> To comply with the Court's order, the Department has revised its
> methodology for calculating a separate rate for the [Cooperative
> Respondents]. In this regard, we have considered the calculated
> margins of zero percent for the [Fully-Investigated Respondents] as
> well as the information on the record of the investigation for the

[Cooperative Respondents]. For this remand redetermination, and consistent with the [Statement of Administrative Action], the Department has determined the antidumping duty margin for the [Cooperative Respondents] by weight-averaging the zero margins for the [Fully-Investigated Respondents] with the estimated margins determined for the [Cooperative Respondents]. In calculating the estimated margins for the [Cooperative Respondents], we relied, in part, upon information provided by these companies in their Section A questionnaire responses to the Department in which they provided the gross volume and value of their sales to the United States during the period of investigation. We also relied upon corroborated information from the petition, as adjusted to reflect the surrogate values incorporated by the Department in its *Remand Determination*.

Second Remand Determination at 5.

Plaintiffs raise two objections to Commerce's methodology and its choice of record evidence used in calculating the Cooperative Respondents' antidumping duty margin. First, Plaintiffs argue that Commerce's determination was not proper because Commerce's calculations were not "based on the best available information." Pls.' Comments Regarding Commerce's Second Remand Determination ("Pls.' Comments") at 3. Second, Plaintiffs contend that Commerce's normal value calculation "is inflated through unexplained and inappropriate material inputs." *Id*. at 7. The court examines each in turn.

A.      *Commerce's selection of "best available information"*

For the Second Remand Determination, Commerce revised its methodology for calculating the Cooperative Respondents' antidumping duty margins. Commerce explained its revised methodology:

Under [19 U.S.C. § 1677f-1(c)], we establish dumping margins by comparing the normal value ("NV") and export price ("EP") of the subject merchandise sold during the period of investigation. To determine the margins for the [Cooperative Respondents], we first calculated a single NV for the [Cooperative Respondents] by relying upon the corroborated factors of production and values provided by the petitioners in the original petition. However, consistent with the *Remand Determination*, we adjusted certain values to reflect the Turkish values for juice apples, selling, general, and administrative expenses, overhead, and profit.

In the petition, the corroborated EP was based on U.S. price obtained by the petitioners. However, since the [Cooperative Respondents] were requested to provide the volume and value of their United States sales of apple juice concentrate during the period of investigation, we were able to use this information as the basis for calculating an EP that more accurately reflected the actual U.S. selling prices of these companies. [Title 19 U.S.C. § 1677a(c)] requires the Department to make adjustments to the EP before it can be compared to the NV to establish a dumping margin. These adjustments typically include packing, movement charges, taxes, etc. Since the average gross unit prices reported by these companies were inclusive of movement and other selling expenses, it was necessary to restate these prices on a net unit price basis. This was accomplished by deducting from these gross unit prices, the weighted-average difference between the Section A gross unit prices of the [Fully-Investigated Respondents]. These adjustments and calculations using the actual data of the [Fully-Investigated Respondents] enabled us to establish the antidumping margins for the separate rate companies as accurately as possible.

Second Remand Determination at 5–6 (citation omitted).

Plaintiffs take issue with Commerce's revised methodology. Specifically, Plaintiffs argue that

Commerce has calculated an average deduction for EP sales based on verified sales data reported by the [Fully-Investigated Respondents]. However, Commerce has chosen to ignore the verified data from these same respondents in its calculation of

> normal value. Instead, Commerce has resorted to the unverified
> assumptions about the factors of production contained in the
> petition. . . .
>
> On its face, it would appear that the best available source of
> information for *both* the net U.S. sales price calculation and the
> normal value calculation would be the information reported by the
> [Fully-Investigated Respondents] and verified by the Department
> in its original investigation.

Pls.' Comments at 3–4 (emphasis in original).

In response, the United States ("Government"), on behalf of Commerce, contends that

> [b]ecause Commerce did not possess information specific to the
> cooperating respondents necessary to adjust the fully-investigated
> respondents' data and as the record established that the experience
> of the fully-investigated respondents differed significantly from the
> experience of the cooperating respondents, Commerce reasonably
> developed a methodology from which it could better discern the
> appropriate margin rate.

Def.'s Reply to Pls.' Comments Upon the Second Remand Redetermination ("Def.'s

Comments") at 7. In support of its position, the Government cites Commerce's reasoning set out

in the Second Remand Determination. *Id.* (citing Second Remand Determination at 7). In the

Second Remand Determination, Commerce specifically responded to Plaintiffs' concern that the

petition data were not the "best available information" for calculating the Cooperative

Respondents' margin:

> Since the record of investigation does not contain any company-
> specific factors of production data for the [Cooperative
> Respondents], as best available information, we relied upon the
> corroborated factors of production from the petition. We did not
> rely upon the factors of production for the fully-investigated
> companies because the record of the investigation shows that the
> factors of production vary significantly from company to company.

Thus, there is no basis for assuming that the factors of production for the fully-investigated companies are any more representative of the factors of production of the [Cooperative Respondents] than the information from the petition.

Second Remand Determination at 7–8. The Government argues that Plaintiffs'

proposed methodology . . . is premised upon speculation that is unsupported by the record. Specifically, [Plaintiffs] assume[] the experience of the fully-investigated respondents mirrors that of the cooperating respondents. The record, however, does not support that assumption. To the contrary, the section A questionnaire responses showed a large difference between the fully-investigated respondents' and the cooperating respondents' average selling price to the United States. Accounting for the same or similar sale terms, the cooperating respondents' average United States section A selling price was [significantly] *lower* than the fully-investigated respondents'.

Def.'s Comments at 7–8 (citing Second Remand Determination at 7) (emphasis in original).

It is worth noting that Plaintiffs do not take issue with either of the findings relied upon by Commerce in reaching its conclusions with respect to its selection of data. That is, Plaintiffs do not dispute (1) that "the factors of production for the fully-investigated companies . . . var[ied] significantly from company to company,"[2] Second Remand Determination at 7, and (2) that "the gross average U.S. selling price of the separate-rate companies is well below the gross average selling[3] price of the fully-investigated companies with the same reported terms of sale . . . ." *Id.*

---

[2]     An examination of the Section D questionnaire responses for the Fully-Investigated Respondents confirms this finding.

[3]     Specifically, Plaintiffs do not dispute that "[a]ccounting for the same or similar sale terms, the cooperating respondents' average United States Section A selling price was 21 percent *lower* than the fully-investigated respondents'." Def.'s Comments at 8 (citing Second Remand Determination at 7) (emphasis in original). An examination of the Section A

(continued...)

Rather, Plaintiffs rely on the notion that the Fully-Investigated Respondents and the Cooperative Respondents are necessarily indistinguishable.

The court finds that Commerce's determination with respect to "best available information" is proper. Specifically, Commerce has "articulate[d] a 'rational connection between the facts found and the choice made.'" *Rhodia, Inc. v. United States*, 25 CIT __, __, 185 F. Supp. 2d 1343, 1348 (2001) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156 168 (1962)). Commerce determined that the "best available information" was the corroborated data from the petition. It explained that the wide variation between the Fully-Investigated Respondents' and the Cooperative Respondents' production data and sales price data indicated that their experiences were not necessarily comparable. Therefore, Commerce further determined that "there is no basis for assuming that the factors of production for the fully-investigated companies are any more representative of the factors of production of the [Cooperative Respondents] than the information in the petition." Second Remand Determination at 7. As there is no dispute with respect to the evidence relied upon by Commerce in reaching its conclusion that the circumstances of the Fully-Investigated Respondents and the Cooperative Respondents were not necessarily the same, and as Plaintiffs make no showing that Commerce's normal value calculation would be more accurate based on the alternative information on the record, the court sustains Commerce's determination in this regard. *See Nation Ford Chem. Co. v. United States*, 166 F.3d 1373, 1377 (Fed. Cir. 1999) (citing *Lasko Metal Prods., Inc. v. United*

---

[3](...continued)
questionnaire responses for the Fully-Investigated Respondents and the Cooperative Respondents confirms this finding.

*States*, 43 F.3d 1442, 1446 (Fed. Cir. 1994)) ("While § 1677b(c) provides guidelines to assist

Commerce in this process, this section also accords Commerce wide discretion in the valuation

of factors of production in the application of those guidelines.").  "Commerce's finding that there

'was no basis to add additional factors for [indirect labor]' was supported by substantial

evidence.  That Plaintiff 'can point to evidence . . . which detracts from . . . [Commerce's]

decision and can hypothesize a . . . basis for a contrary determination is neither surprising nor

persuasive.'" *Air Prods. & Chems., Inc.*, 22 CIT at 444, 14 F. Supp. 2d at 748 (quoting

*Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 936 (Fed. Cir. 1984)).


>          B.          *Commerce's normal value calculation*

Plaintiffs argue that "[n]otwithstanding [their first argument], if it is reasonable for

Commerce to base its normal value calculation on information from the petition, the calculation

must still be revised to remove inappropriate and unexplained material inputs."  Pls.' Comments

at 7.  Plaintiffs point to two examples in support of this argument.  First, Plaintiffs state that

> [t]he most arbitrary addition Commerce made to its normal value
> calculation is the addition of a material input that is merely
> described as "maintenance/supplies."  On its face, it is apparent
> that an item defined as "maintenance/supplies" is *not* a material
> input.  Instead, maintenance/supply items are properly designated
> as factory overhead.  Thus, in light of the fact that Commerce is
> already adding a 17.64% factory overhead ratio to its normal value
> calculation, the inclusion of a factory overhead item in its material
> inputs is an unlawful double counting.

Pls.' Comments at 8 (citation omitted) (emphasis in original).  Plaintiffs then state:

> Likewise, Commerce makes no attempt to explain what material
> inputs are accounted for in "miscellaneous costs" and
> "miscellaneous utilities."  It is difficult to imagine what could be

> included in these "miscellaneous" baskets since Commerce has already listed every necessary input for [apple juice concentrate] (and the energy costs) individually.

*Id*. Plaintiffs conclude that

> it is wholly unreasonable for Commerce to include these extra expenses in its normal value calculation without even attempting to describe the material inputs they are supposed to represent. Their inclusion demonstrates that Commerce has failed to use the best available information in its normal value calculation, and that it has failed to recalculate the Section A margin as accurately as possible.

*Id*. at 9.

The Government argues:

> Suggesting that the Court delve into the minutia of antidumping rate calculations, [Plaintiffs] contend[] elements of the petition data are unexplained. The basis for each of the petition line-items, however, is evident from Commerce's various corroboration memoranda. The petition data is [sic] derived from the records of [an identifiable source]. Thus, the line-items for miscellaneous costs and maintenance/supplies, for example, originate from that [source].

Def.'s Comments at 9–10 (citations omitted).

While complaining of Commerce's behavior, Plaintiffs make no effort to prove their case. Rather, they rely on what they claim to be true "[o]n its face" and what "[i]s difficult to imagine." Pls.' Comments at 8. An examination of the record, though, reveals the following concerning the factors of production. First, there are no actual costs for the factors of production of the Cooperative Respondents since they were not asked to answer Section D of the questionnaire. Second, there was a lack of uniformity in the responses of the Fully-Investigated Respondents

with respect not only to the value of the factors of production, but also as to the factors of production themselves. For instance, with respect to Apple Juice Concentrate, one respondent listed "pectolytic [enzyme]" as an individual factor while others did not. *See* Conf. R. Doc. 41, Ex. D-1. "Gelatin" was listed as an individual factor by three respondents but not by the others. *Compare* Conf. R. Docs. 42, 43, 45, Ex. D-1 *with* Conf. R. Docs. 40, 41, Ex. D-1. Further, there is no correlation between many of the factors listed in the Section D questionnaire responses of the Fully-Investigated Respondents and those found in the petition. For instance, "pectinex," "plastic liners," "aseptic," "steel drums," "labels," and "PakLab" (labor hours for packing) are all listed individually on the Fully-Investigated Respondents' Section D questionnaire responses but are not individually broken down in the petition. *Compare* Conf. R. Docs. 40, 41, 42, 43 and 45 *with* Pet. for the Imposition of Antidumping Duties: Certain Non-Frozen Apple Juice Concentrate from China, Conf. R. Doc. 1, Ex. 12, Attach. B. Thus, it may be presumed that they are covered by the categories "maintenance/supplies" and "miscellaneous costs." *See* Antidumping Investigation Initiation Checklist of 6/28/99, Conf. App. Def.'s Comments, Ex. 5 at 14. Third, with respect to "miscellaneous utilities," these are identified as being water and waste water treatment in Commerce's memorandum corroborating the petition data ("Corroboration Memorandum"). *See* Mem. from Susan H. Kuhbach to File of 4/6/00 (corroborating petition data), Conf. App. Def.'s Comments, Ex.6 at 3. In constructing normal value, Commerce is charged with the duty to use the "best available information" in the valuation of factors of production. *See* 19 U.S.C. § 1677b(c)(1)(B). In doing so, Commerce must capture all of the costs of production no matter how characterized. In their papers, Plaintiffs merely demonstrate that Commerce, using the petition, denominated the various factors of production differently than

was done in the Section D questionnaire responses of the Fully-Investigated Respondents. They have not demonstrated, however, that though the factors of production were denominated differently, they did not capture all of the costs of production. As such, Plaintiffs have offered nothing but speculation to support their claim that the normal value calculation was flawed. Given the Corroboration Memorandum and Commerce's duty to select from among "best available information," it has "articulate[d] a 'rational connection between the facts found and the choice made.'" *Rhodia, Inc.*, 25 CIT at __, 185 F. Supp. 2d at 1348 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

Perhaps most importantly, however, had Plaintiffs wished to dispute the items about which it complains, they should have done so in the context of Commerce's proceedings on remand. Having failed to do so, Plaintiffs cannot now dispute these items. *See* Letter from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt, LLP to Commerce of 4/23/03 (comments on draft remand and recalculation of Section A rate), Conf. App. Def.'s Comments, Ex. 3. The record shows that Plaintiffs raised other issues as to various factors at the administrative level and that Commerce did respond to them. However, Plaintiffs did not raise the questions they are now asking the court to decide. *See, e.g.*, Second Remand Determination at 8 (agreeing with Plaintiffs that the EP calculation incorrectly relied upon "CEP sales information"); *id.* (agreeing with Plaintiffs that the EP calculation "incorrectly deducts ocean freight from all [Cooperative Respondents'] sales."). By raising these matters for the first time before this court, Plaintiffs are simply too late. "The exhaustion doctrine requires a party to present its claims to the relevant administrative agency for the agency's consideration before raising these claims to the Court."

*Fabrique de Fer de Charleroi S.A. v. United States*, 25 CIT __, __, 155 F. Supp. 2d 801, 805

(2001) (citing *Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155 (1946));

*Unemployment Comp. Comm'n of Alaska*, 329 U.S. at 155 ("A reviewing court usurps the

agency's function when it sets aside the administrative determination upon a ground not

theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its

ruling, and state the reasons for its action."); *Pohang Iron & Steel Co. v. United States*, 23 CIT

778, 792, slip op. 99-112 at 36 (Oct. 20, 1999) ("The court generally takes a strict view of the

need to exhaust remedies by raising all arguments."); *see also Fabrique de Fer de Charleroi S.A.*,

25 CIT at __ n.1, 155 F. Supp. 2d at 805 n.1 (noting court's discretion in application of the

exhaustion requirement and listing examples of exceptions fashioned thereto).


CONCLUSION

For the foregoing reasons, Commerce's Second Remand Determination is sustained.

Judgment shall enter accordingly.


_____
Richard K. Eaton, Judge


Dated: November 20, 2003
      New York, New York